# Richmond

## The Texas Company, Et Als. v. M. Zeigler, Administrator, Etc.

April 21, 1941.

Record No. 2318.

Present, Holt, Hudgins, Browning, Eggleston and Spratley, JJ.

*George C. Peery, S. L. Sinnott, V. P. Randolph, Jr., A. S. Higginbotham* and *Smith & Peery,* for the plaintiffs in error.

*Crockett & Gillespie,* for the defendant in error.

BROWNING, J., delivered the opinion of the court.

This was an action for damages for the death of Otis E. Zeigler, a youth of seventeen, occasioned by a collision between an automobile, in which the plaintiff's decedent was riding, and a gasoline truck, belonging to C. R. Moss, the local distributor for the Texas Company. It was at night and it was dark and misting. The truck was being driven at the time of the accident, February 14th, 1939, by Frank J. Moss, brother of C. R. Moss, who employed him as a truck driver. The automobile was being driven by a youth named Eddie Jewell. There were six occupants of the automobile, four of whom were killed, including the driver. The two who survived were asleep on the rear seat at the time. They knew nothing of the incidents of the accident and therefore their testimony could throw no light upon it. The driver of

the truck died before the trial of causes unconnected with the accident.

There were two witnesses who testified that they saw the collision. Their testimony was conflicting. One was a state employee, who was driving an automobile in an easterly direction opposite to that of the truck which was involved. He testified very positively that the truck was on the wrong side of the road as it turned the curve where the collision occurred, and that the Jewell automobile was on its right side. There was testimony that the lights of the truck were not changed and that they blinded the driver of the Jewell car. The physical facts tended to prove that the truck driver was negligent in the operation of the truck. We may say that there was evidence of a credible nature quite sufficient to make the question of negligence one for the jury.

It returned a verdict in favor of the plaintiff which was confirmed by the court. With it we cannot interfere. In fact, we think it was fully justified by the evidence. The granting of several instructions was made the bases of error by exceptions upon the grounds that there was no evidence upon which to found them. With this we are not in accord. There was ample evidence for this purpose.

This case really depends upon the determination of the question whether the employee of the Texas Company, Charles R. Moss, was an independent contractor in his relationship to the company, or was its servant in the relationship of master and servant, or its agent in the relationship of principal and agent. Whichever of the two latter relationships may obtain, the legal effect is the same, in contra-distinction to that of the relationship of independent contractor. The question has risen in similar cases in this court and in the courts of many other jurisdictions, including that of the United States. To say that there is not a conflict of authority would be withholding frankness. We are safe, however, in saying that the decided weight of authority is that

an employee who performs services under circumstances like those obtaining here occupies to his employer the relationship of servant or agent, and the employer is liable for the consequences of his acts of negligence.

The pertinent parts of the contract with which we are concerned, and which we take from the able opinion of the learned trial judge, are, in epitome, these:

"Date: June 15, 1937.

"The parties are The Texas Company, called consignor, and C. R. Moss, called consignee.

"Consignee agrees to:

"1. Diligently market and distribute petroleum products supplied by consignor.

"2. Promptly and accurately account, on forms provided by consignor, for all consignor's moneys, goods, equipment, etc.;

"3. Sell consignor's products for cash, or on properly authorized credit, and to be liable for any sum due on an account opened without authority, and for all sums in excess of the credit maximum on any account;

"4. Not to sell at less than consignor's authorized price, nor to enter into any secret agreement to reduce the price or control business;

"6. Bear all expenses, except certain freight and taxes, of the proper operation of the station covered by the agreement;

"7. At his expense to furnish trucks and other equipment required for the distribution of products, and conforming to consignor's standards;

"8. Hire and pay the wages of all assistants and employees required for the proper and diligent operation of said station, assume full direction and control over them and responsibility for them, and to indemnify consignor against all property damage and personal injury caused by the acts of the consignee, his assistants or employees;

"9. Give bond to properly account for money and property of consignor;

"10. Not assign the agreement without prior written consent of consignor;

"11. Pay indebtedness due consignor at Norfolk, Virginia.

"Consignor shall:

"1. Have the right to withhold commissions to cover consignee's indebtedness;

"2. In event of termination of the agreement, have the right for three months, to make certain use of consignee's storage facilities;

"3. Pay freight on products shipped, and taxes on consignor's merchandise, stock and equipment;

"4. Pay consignee certain stated commissions.

"It is stipulated that:

"1. At the close of each month, and at the termination of the agreement, consignor shall withhold from consignee's commissions 10% of Accounts Receivable A, and pay the consignee the balance plus the 10% withheld at the close of the preceding month, less deductions provided for in the agreement. In the event of termination of the contract consignor is not obligated to pay consignee any amount withheld in accordance with this provision, or commissions on any uncollected sales. Accounts Receivable A are accounts less than four months overdue;

"2. Title to all products remains in consignor until sale by consignee in accordance with this agreement;

"3. Consignee accepts exclusive liability for workmen's compensation insurance, unemployment insurance, old age pensions, annuities and retirement benefits imposed by federal or state laws, which are measured by compensation paid to persons employed by consignee.

"4. In event of termination of agreement by either party, consignee shall not engage in similar business within 50 miles of Richlands for five years.

"5. The agreement continues in force until it is terminated by either party on five days' written notice."

The facts bearing upon this question are very con-

cisely and clearly stated in the opinion referred to, and we quote them:

"The oral evidence shows that C. R. Moss owned the truck involved in the collision, on the sides of which, and on the front end of the cab, appeared the word 'Texaco,' and on the panel boards were the words 'The Texas Company—C. R. Moss, Consignee.' The gas station was on property leased by The Texas Company. The telephone was in the name of The Texas Company, but paid for by C. R. Moss, and The Texas Company pays the merchant's license tax on the business. The company approves all accounts and fixes the price of the products sold. On cash sales the truck drivers usually collected and gave a receipted invoice, on a printed form, signed by The Texas Company by........ In this blank was inserted the name of C. R. Moss, by the driver. On the printed form introduced only one blank appears to be signed after the name of The Texas Company. When Frank J. Moss made sales, he would sign in this blank space the name of C. R. Moss, by Frank J. Moss, so the completed invoice would be signed The Texas Company, by C. R. Moss, by Frank J. Moss. Two copies of this invoice were sent to the company twice a week with the report of sales, and the company knew that C. R. Moss was employing Frank J. Moss to deliver gasoline, and C. R. Moss testified that the company accepted the services of his brother in that way.

"The charge accounts were written in the name of The Texas Company and were collected by C. R. Moss, and he deposited the cash and account collections and remitted to the company at Norfolk by draft twice a week. All checks were payable to The Texas Company and the company furnished him a stamp to endorse the checks, and he endorsed the company's name on the checks with the stamp.

"C. R. Moss owned the storage tanks at the plant, and they were lettered 'Texaco' on the railroad side, and on each end is placed the company's trade mark or em-

blem. The company delivers the oil and gasoline to a point on the railroad track and Mr. Moss pumped it into his storage tanks at his expense.

"C. R. Moss employed the truck drivers and paid them. He testified that the company had no right to control the movements of the trucks, or the wages he paid to the drivers, or their hours of work; that it was understood with Frank J. Moss that he was employed as C. R. Moss' employee.

"On these facts the defendant contends that C. R. Moss was an independent contractor, for whose negligence and for the negligence of whose assistants or employees, the company is not liable; while the plaintiff contends that the relation of master and servant is established."

This court has quite recently had occasion to consider this question, and it has emphasized the importance of the right of control of the employee in the performance of the duties to which he has engaged himself as a test of what his relation to his employer is. We must remember that the inquiry is not whether the employer exercise the power of control, but whether he has it. If he has it it is an indicium of the relationship of master and servant.

We said in the case of *Hann* v. *Times Dispatch Publishing Co.*, 166 Va. 102, 106, 184 S. E. 183:

"In two recent cases we have said, 'The ordinary test is "Who has the power to control and direct the servants in the performance of their work?" ' *Crowder* v. *Haymaker*, 164 Va. 77, 80, 178 S. E. 803, 804; *Epperson* v. *DeJarnette*, 164 Va. 482, 486, 180 S. E. 412."

In the *Hann* v. *Times Dispatch Case, supra,* this was said, through Eggleston, J.:

"In *Press Publishing Co.* v. *Industrial Accident Comm.,* 190 Cal. 114, 210 P. 820, the highest court of California held that a route carrier of newspapers, employed under almost the identical circumstances, was an employee and not an independent contractor. What was

there said (210 P. 820, at page 823) is quite pertinent here: 'As previously indicated, it is not the actual exercise of control, but the right of control—that is to say, the potential power of control—which is important in a determination of whether or not the status of an employee or independent contract [or] exists. * * * One of the means of ascertaining whether or not this right to control exists is the determination of whether or not, if instructions were given, they would have to be obeyed. In the instant case, it is undisputed that the Press Publishing Company had the power to hire and the power to discharge its carriers for unsatisfactory service, and in this regard Benefield was in no better position than the other carriers. This power of discharge made obligatory any instructions given, for it gave to the Press Publishing Company the power to require obedience to those instructions and insured their being carried out. * * *,"

Only a glance at the provisions of the contract satisfies the enquirer of the fact that almost every action of C. R. Moss in the discharge of his duties is within the power of control of The Texas Company. To be sure, the contract is adroitly written, perhaps to avoid the very result complained of here; but the incompatibility of the rights reserved to the company and its escape from resultant liability is patent. The contractual right to the company to do all that it reserved to itself put Moss under a complete system of restraint and power. He was not allowed to do business in his own name unassociated with that of the company. He was its consignee. It emblazoned Mr. Moss's trucks and tanks with its emblems. The filling station was titled in its name. The license was its own. The sales of the products and the receipts were all in the name of the company. Whether sales were to be for cash or on credit was determined by it. The prices were fixed by it, and they could not be varied except with its consent. Mr. Moss was accorded the privilege of furnishing the trucks and other

equipment, but they were required to conform to the company's standards. Another privilege which Mr. Moss enjoyed was that of hiring his assistants and employees; but he had to assume full control and responsibility for them, and he was required to indemnify and save harmless the company from any damage occasioned by himself or them. Mr. Moss could not, without the company's written consent, assign the contract, which, incidentally, is a right that inheres in the relationship of an independent contractor. After Mr. Moss remitted all moneys to the company at Norfolk, Virginia, it paid his commissions *in solido* for work done and service performed. The company retained title to all products that were consigned and delivered to Mr. Moss until they were actually sold. Still another privilege which was accorded him was liability for all premiums incident to compensation and unemployment insurance, old age pensions and retirement profits. If Mr. Moss's connection with the company were terminated, he could not engage in any business of like character within a radius of fifty miles from Richlands, Virginia, and this inhibition lasted for a period of five years. All checks for products were drawn to the order of the company. The telephone in the plant was in its name, and finally, either party could terminate the agreement on five days' written notice. It is difficult to conceive a set of circumstances indicative of the power of more complete control of the servant in the performance of his duties.

In the well considered case of *Fox Park Timber Co.* v. *Baker*, 53 Wyo. 467, 84 P. (2d) 736, this was said:

"Was Baker in performing the duties assigned him an independent contractor? Many tests have been devised by legal thought to determine whether or not the person who has entered upon the performance of certain work should be classed as such, and a survey of the cases, of which there are legion, makes it clear that the individual circumstances of each case play an important part in answering the query. The decisions of

the courts are far from reconciliable. However, there are certain well known earmarks which are pretty generally examined by them before announcing their conclusions. An outstanding one of these is whether the employer has or has not retained the right of control over the party whose status is in question. If he has retained such right, the party is generally regarded as a servant. *Stockwell* v. *Morris*, 46 Wyo. 1, 22 P. (2d) 189; 28 R. C. L. 762; 71 C. J. 455, and cases cited. Another test is whether either of the parties possesses the right to terminate the services at will without incurring liability to the other, this embracing, of course, the right of the employer at any time to discharge the party performing the work, an affirmative answer establishing the status of master and servant. *Burchett* v. *Department of Labor & Industries,* 146 Wash. 85, 261 P. 802, 263 P. 746; *Press Publishing Co.* v. *Industrial Accident Commission,* 190 Cal. 114, 210 P. 820; *Industrial Commission* v. *Bonfils,* 78 Colo. 306, 241 P. 735; *Barker* v. *Benidji Wood Products Co.,* 184 Minn. 366, 238 N. W. 692; *Aisenberg* v. *C. F. Adams Co.,* 95 Conn. 419, 111 A. 591; 71 C. J. 460, and cases cited; *Burruss* v. *B. M. C. Logging Co.,* 38 N. M. 254, 31 P. (2d) 263.''

A case of much value as illuminative of the issue we have before us was decided recently by the Circuit Court of Appeals of the Fourth Circuit. The opinion was written by Soper, Circuit Judge. The case is styled *Gulf Refining Co.* v. *Brown*, 93 F. (2d) 870 (C. C. A. 4). It went up from the District Court of the United States for the Western District of Virginia. It was there said:

''Some conflict of authority has arisen as to whether the distributor, under such a contract, is an employee of the oil company, or an independent contractor for whose delicts the company has no responsibility. Some courts have thought that the oil company has no right to supervise deliveries, select the number and character of the vehicles, choose the employees engaged in delivery, fix their wages, or control the manner in which delivery

should be made; and hence have concluded that the relationship of independent contractor was created. *Greaser* v. *Appaline Oil Co.,* 109 W. Va. 396, 155 S. E. 170; *Gulf Refining Co.* v. *Wilkinson,* 94 Fla. 664, 114 So. 503; *Inman* v. *Gulf Refining Co.,* 194 N. C. 566, 140 S. E. 289. But the decided weight of authority is to the contrary. Facts like those pointed out above as indicating a very complete control by the company of its products during the process of sale and delivery have been found determinative, and it has been decided that the oil company has not only held out the distributor as its employee, but has controlled and directed him in important particulars and in practical effect has retained power to subject him in the course of the business to its will and direction in any respect in which it might choose to do so. *Standard Oil Co.* v. *Parkinson,* 8 Cir., 152 F. 681; *Gulf Refining Co.* v. *Huffman & Weakley,* 155 Tenn. 580, 297 S. W. 199; *Magnolia Petroleum Co.* v. *Johnson,* 149 Ark. 553, 233 S. W. 680; *Angell* v. *White Eagle Oil & Refining Co.,* 169 Minn. 183, 210 N. W. 1004; *Texas Co.* v. *Jackson,* 174 Miss. 737, 165 So. 546; *Texas Co.* v. *Mills,* 171 Miss. 231, 156 So. 866; *Goff* v. *Sinclair Refining Co.,* La. App., 162 So. 452; *Tate* v. *Claussen-Lawrence Const. Co.,* 168 S. C. 481, 167 S. E. 826, with which compare *Sams* v. *Arthur,* 135 S. C. 123, 133 S. E. 205; *Johnson* v. *Steele,* 154 Or. 137, 59 P. (2d) 237; *Magnolia Petroleum Co.* v. *Pierce,* 132 Okl. 167, 269 P. 1076, 61 A. L. R. 218; *Fischer* v. *Havelock,* 134 Cal. App. 584, 25 P. (2d) 864; *United States Fidelity & Guar. Co.* v. *Industrial Commission,* 42 Ariz. 422, 26 P. (2d) 1012; *Maryland Casualty Co.* v. *Kent,* Tex. Com. App., 3 S. W. (2d) 414; *Lynn* v. *Roberts,* 257 Mich. 116, 241 N. W. 214.

"We are in accord with the latter conclusion. It is only by consideration of all of the facts pertaining to the relationship in any case, including the provisions of the contract, the actual conduct of the parties, and the conditions of the business in which they are engaged, that it can be determined whether the distributor is endowed

with that control over his own methods and means of doing the work which is the test of an independent contractor. No more definite test has been devised, and the Restatement of Agency itself, section 220 (2), merely lists certain matters of fact which, amongst others, may be considered in determining whether one acting for another is a servant or independent contractor. When these nonexclusive tests are applied to the facts of the pending case, we find confirmation of the conclusion we have reached. * * *''

The contract which was implicated in *Gulf Refining Co.* v. *Brown, supra,* is very like that we are considering and the setting very much the same.

The Reporter System teems with cases that contain conditions and circumstances very similar to the one in judgment, and their citation would be appropriate, but it seems unnecessary to do more than we have already done; which is simply to name some of them.

A refreshing source of authority, always, to quote is Thompson on Negligence. In Vol. 1, section 579, we find this:

''The right to control the conduct of another implies the power to discharge him from the service or employment for disobedience; and, accordingly, the power to discharge has been regarded as the test by which to determine whether the relation of master and servant exists.''

Other questions, growing out of the main one, are considered in the briefs, but we do not think it necessary to further amplify our convictions It has been suggested that the thoughts which we have expressed may be in conflict with what this court held in the recent case of *Griffith* v. *Electrolux Corp.,* 176 Va. 378, 11 S. E. (2d) 644. The points of distinction between the two cases are very clear and convincing. In the latter case, the power of dismissal was not absolute; if it had been, the employer would have had the right to require the employee to obey instructions. But the contract, on the

contrary, expressly stipulated that the Electrolux Corporation might submit suggestions to Thaxton, its employee, but he could accept or reject them as it pleased him, and that he might conduct his business and devote such time thereto as he deemed advisable. Manifestly, that is not our case. Incidentally, the two cases were decided by the same eminent trial judge.

We affirm the judgment of the court without difficulty.

*Affirmed.*