# Richmond

UNEMPLOYMENT COMPENSATION COMMISSION OF VIRGINIA v. LOUISE B. HARVEY.

January 19, 1942.

Record No. 2453.

Present, All the Justices.

204

The opinion states the case.

*Abram P. Staples, Attorney-General,* and *Kenneth C. Patty, Assistant Attorney-General,* for the plaintiff in error.

*John B. Welsh,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

The Unemployment Compensation Commission of Virginia filed a notice of motion for judgment in the court below against Louise B. Harvey to recover pay roll taxes for the years 1937, 1938 and 1939, amounting in all to $209.68. The basis of the motion was that the defendant was an "employer" as defined in section 2 of the Virginia Unemployment Compensation Act (Acts 1936-7, Ex. Sess. ch. 1, p. 3, as amended by Acts 1938, ch. 446, p. 1004; 1938 Supp. to Michie's Code of 1936, sec. 1887 (94) ), and hence was liable for the pay roll taxes for the respective years in accordance with the provisions of section 7 of the act (1938 Supp. to Michie's Code of 1936, sec. 1887(99) ). The defendant filed a plea denying that she was an employer, as defined in the act, and alleging that therefore she was not liable for the taxes sought to be recovered.

The plaintiff, the Unemployment Compensation Commission, filed a replication to this plea, alleging that in a proceeding filed by one Alice Towns with the Unemployment Compensation Commission claiming benefits under section 6 of the act (1938 Supp. to Michie's Code of 1936, sec. 1887(98) ), it had been determined by the commission that the defendant was an employer within the meaning of the act; that since the defendant "was present at said hearing and a party thereto and submitted evidence * * * in

support of her contention that she was not, and never had been, an employer within the meaning of said act," and that since the defendant had not appealed from the decision of the Unemployment Compensation Commission, as provided by the act, she was now estopped by the final judgment rendered by the commission to deny both that she was an employer within the meaning of the act and that she was liable for the taxes sought to be recovered. The defendant demurred to this replication.

A jury having been waived by both sides, all matters of law and fact were submitted to the court upon the identical evidence produced before the commission in the proceeding filed by Alice Towns.

The lower court held (1) that the defendant was not estopped by the former proceeding to deny that she was an employer, and (2) that she was not, under the evidence submitted, an employer within the meaning of the act, and hence was not liable for the taxes sought to be recovered. To the judgment entered for the defendant the Unemployment Compensation Commission, the plaintiff below, has sought and obtained the present writ of error.

At the outset we are met with a motion to dismiss the writ on the ground that it is a matter "merely pecuniary" and does not involve the jurisdictional amount of $300 required by Code, section 6337 (as amended by Acts 1922, ch. 41, p. 45; Acts 1938, ch. 76, p. 134).

[■] In our opinion the motion should be overruled. Code, section 6336, provides that, "Any person who thinks himself aggrieved by any judgment, decree, or order in a controversy concerning * * * the right of the State, county, or municipal corporation to levy tolls or taxes, or involving the construction of any statute, ordinance, or county proceeding imposing taxes," may present a petition for an appeal or for a writ of error, etc.

Code, section 6337, as amended, prohibits the granting of an appeal or writ of error to review a final judgment or decree where the amount in controversy is less than $300,

"unless there be drawn in question * * * some matter not merely pecuniary."

These sections conform to section 88 of the Constitution of 1902 relating to the jurisdiction of this court. That section provided:

"The court shall not have jurisdiction in civil cases where the matter in controversy, exclusive of cost and of interest accrued since the judgment in the court below, is less in value or amount than three hundred dollars, except in controversies concerning * * * the right of the State, county, or municipal corporation to levy tolls or taxes or involving the construction of. any statute, ordinance or county proceeding imposing taxes; * * *."

In *Prince George County* v. *Atlantic, M. & O. R. Co.,* 87 Va. 283, 12 S. E. 667, it was held that under Article VI, section 2, of the Constitution then in effect, denying to this court jurisdiction "in civil cases where the matter in controversy, exclusive of costs, is less in value or amount than five hundred dollars, except in controversies concerning * * * the right of a corporation or of a county to levy tolls or taxes," we had jurisdiction of a suit to recover taxes paid under protest, although the amount involved was less than $500, where the right of the county to levy the taxes was involved.

In that case the county had levied taxes against the railroad company for the year 1880 under an enabling act passed by the General Assembly and which became effective that year. The railroad company successfully contended in the court below that under a proper interpretation of the act, taxes could not be assessed against it for the year 1880. Although the amount involved was less than $500, this court assumed jurisdiction of the matter and reversed the judgment of the lower court.

That holding was expressly approved by this court in the later case of *Schermerhorn's Ex'x* v. *Commonwealth,* 107 Va. 707, 711, 60 S. E. 65. The *Schermerhorn Case,* however, involved the question as to whether the assessment of certain property and the tax thereon were excessive. Since

only the amount of the tax was there involved the writ was dismissed, this court saying (107 Va., at page 709): "Unless the right to impose the tax, or the construction of the statute under which it is imposed, was called in question, or necessarily passed upon by the court below, it would seem clear that this court is without jurisdiction, as the aggregate amount of the taxes and levies involved is less than $300," citing section 88 of the Constitution of 1902, *supra*. To the same effect see *Cohen* v. *Walford*, 111 Va. 812, 70 S. E. 850.

The inescapable inference to be drawn from these cases last cited is that if the judgment below had involved the right to impose the tax, or the construction of the statute under which it had been imposed, the jurisdiction of the court would have been sustained regardless of the amount involved.

Since these cases were decided the constitutional limitations on the jurisdiction of this court, found in section 88 of the Constitution of 1902, quoted above, have been eliminated by the 1928 amendment. The effect of this amendment, however, in no way impairs the statutory provisions of Code, sections 6336 and 6337.

Inasmuch as the present proceeding is "a controversy concerning * * * the right of the State, * * * to levy tolls or taxes," or is one "involving the construction" of a "statute" "imposing taxes," it comes squarely within the jurisdiction of this court as defined in Code, section 6336.

In our opinion the lower court correctly held that the final order entered by the Unemployment Compensation Commission in the proceeding filed before it by Alice Towns did not estop Louise B. Harvey from denying in the present proceeding that she was an employer or that she was liable for the tax, under the provisions of the Unemployment Compensation Act.

It is well settled that in order for the principle of *res judicata* to apply to an *in personam* judgment or decree, such judgment or decree which is pleaded by way of estoppel must have been rendered in a suit between the same parties or their privies. Barton's Chancery Practice, 3rd Ed.,

p. 348; *Chapmans* v. *Chapman*, 1 Munf. (15 Va.) 398, 402; *Stinchcomb* v. *Marsh*, 15 Gratt. (56 Va.) 202, 204; *Bargamin* v. *Clarke*, 20 Gratt. (61 Va.) 544, 548-549; *Fishburne* v. *Engledove*, 91 Va. 548, 556, 22 S. E. 354. Or, to state the matter another way, a judgment does not bind strangers to it.

Moreover, the operation of estoppel must be mutual. Both litigants must be concluded or the proceeding can not be set up as conclusive upon either. *Anderson* v. *Sisson*, 170 Va. 178, 182, 196 S. E. 688, 689.

The judgment or order which the plaintiff asserts by way of estoppel was rendered in a proceeding filed by Alice Towns before the commission claiming benefits under the act. The claimant took the position that she was entitled to share in a fund which had been set up in the treasury of Virginia for the benefit of her and others under the act. Louise B. Harvey was not a party to the proceeding and no judgment was sought or rendered against her. While a finding by the commission that Alice Towns was her (Louise B. Harvey's) employee was of sufficient interest to the latter to justify her presence at the hearing, her attendance there did not make her a party to the litigation. One not a party to an *in personam* proceeding is not bound by the judgment rendered therein merely because he was present and cross-examined the witnesses. *Turpin, Adm'r* v. *Thomas*, 2 Hen. & Mun. (12 Va.) 139, 3 Am. Dec. 615.

Neither was the Unemployment Compensation Commission a party to the proceeding filed by Alice Towns. It was the administrative tribunal which heard her claim. Had the claim of Alice Towns been disallowed, Louise B. Harvey could not have pleaded such disallowance in the present suit. Since the parties to the present proceeding were not parties to the former proceeding, either in their own right or by their privies, the principle of *res judicata* does not apply.

We come, then, to the merits of the controversy. The ultimate question is, Is Louise B. Harvey, the defendant in error, liable for the taxes sought to be recovered of her? Both parties agree that the correct answer to this question

turns on whether she is an "employer" within the meaning of the Virginia Unemployment Compensation Act (Acts 1936-7, Ex. Sess., ch. 1, p. 3, as amended by Acts 1938, ch. 446, p. 1004; 1938 Supp. to Michie's Code of 1936, sections 1887(93) *ff.*). The commission contends that she is such an employer, while she contends that she is not.

It will be observed that this is not a "court review" of a decision of the commission, in which the latter's findings of fact are conclusive, as provided in section 6(i) of the act (1938 Supp., section 1887(98)(i) ). It is a suit to recover taxes, sometimes referred to in the act as "contributions," brought under section 14 of the act (1938 Supp., section 1887(106) ), wherein, by stipulation of counsel, the matter was submitted to the court on a transcript of the testimony taken before the commission. Since the witnesses were not heard *ore tenus* by the trial court, the matter is before us as if it had been heard by the court below on depositions.

The preponderance of the evidence shows these facts:

Louise B. Harvey, who will sometimes be referred to as the defendant, operates three beauty salon establishments at three separate addresses in the city of Richmond. These establishments are known as Harvey's Modern Beauty Academy No. 1, Harvey's Modern Beauty Salon No. 2, and Harvey's Modern Beauty Salon No. 3. It is admitted that during each of the years 1937, 1938 and 1939, there were at the three establishments a sufficient number of workers or operatives to bring them within the purview of the act provided the other necessary qualifications exist.

The defendant first comes in contact with the workers as students or appprentices in the art of beauty culture. They take a course under her supervision at one of her establishments. While undergoing their training the apprentices do beauty·culture work for customers. The defendant makes a charge for this service of the customer and pays the apprentice twenty-five cents for each customer served by the apprentice.

After an apprentice has completed her course she is assigned a definite booth in one of the establishments, for

which she pays the defendant a fixed weekly sum of $6.00, designated by the parties as a "rental." Each operative has her name over the booth assigned to her. The wash basins are furnished by the defendant, while the operatives furnish the towels, hand dryers, clippers, hairpins, and other necessary "tools." The towels are laundered at the expense of the operative. Each operative is required to wear a uniform furnished at her expense. No fixed hours are required of the operatives, who go and come as they please provided they keep their appointments and complete their work. Each operative has the right to solicit and serve her own customers, but all work is done by the operative at her booth. When a stranger enters any one of the establishments she is directed by the cashier, who is an apprentice, to one of the operatives who is not then engaged. The defendant exercises no control over the graduate operatives in the manner in which they perform their services for the customers. Weekly settlements are had between the defendant and the operatives. The first $6.00 collected by or on behalf of a particular operative is retained by the establishment as a rental for the booth occupied by her. All in excess of this amount is the property of the operative.

The so-called "leases" of the booths are for no definite term. When an operative fails to produce a sufficient amount to pay the weekly charge of $6.00, the defendant may cancel the "lease" and assign the booth to another.

Upon this record the learned trial court held that each operative "was an independent operator," and was a "renter of a booth at a specified stipulation per week" from the defendant, and was not in the latter's employment within the meaning of the Unemployment Compensation Act.

In its written opinion the lower court makes no analysis of the provisions of the act, and apparently reached its conclusions upon the application of common-law principles. At that time it did not have the benefit of our opinion in *Life & Casualty Ins. Co. v. Unemployment Compensation Commission*, 178 Va. 46, 16 S. E. (2d) 357, since decided. That case involved the question as to whether the solicitors of a life

insurance company were in the employment of the company within the meaning of the act. Speaking through Mr. Justice Gregory, this court said (178 Va., at page 57, 16 S. E. (2d), at page 361):

" * * * It was the intent of the legislature, as expressed in the language used, to make the act broader and more inclusive than the ordinary relation of master and servant. * * *

"Tort cases and those arising under the Workmen's Compensation Statutes are not relevant. We are confined here to the single proposition of whether these insurance agents are in employment under the Virginia Unemployment Compensation Act."

Many if not all of the States have enacted unemployment compensation statutes substantially similar to ours. While a few of the courts have held that the statutory provisions are merely declaratory of common-law principles, the great weight of authority is that these acts are broader and more inclusive in their scope. See *Unemployment Compensation Commission of North Carolina* v. *National Life Ins. Co.,* 219 N. C. 576, 14 S. E. (2d) 689, 695, where a number of cases on the subject are collected.

In the absence of constitutional restraint the legislature may, of course, determine and define what shall constitute "employment" subject to taxation without regard to the common-law conception of that term. And, as we said in *Life & Casualty Ins. Co.* v. *Unemployment Compensation Commission, supra,* such was the purpose of and result obtained by the act.

Section 2 of the Virginia act (prior to the amendments by the Acts of 1940, which are not applicable here) (Acts 1936-7, Ex. Sess., ch. 1, p. 3, as amended by Acts 1938, ch. 446, p. 1004; 1938 Supp. to Michie's Code of 1936, section 1887(94) ) contains these pertinent definitions:

"(h) 'Employing unit' means any individual or type of organization, * * * which has or subsequent to January first, nineteen hundred and thirty-six, had in its employ one or

more individuals performing services for it within the State. * * *

"(i) 'Employer' means:

"(1) Any employing unit which for some portion of a day, * * * has or had in employment, eight or more individuals, * * .

* * * * * * * *

"(j) (1) Subject to the provisions of this subsection (j) 'employment' means service, including service in interstate commerce, performed for remuneration or under any contract of hire, written or oral, express or implied.

* * * * * * * *

"(r) 'Wages' means all remuneration payable for personal services, including commissions and bonuses and the cash value of all remuneration payable in any medium other than cash. Gratuities customarily received by an individual in the course of his employment from persons other than his employing unit shall be treated as wages payable by his employing unit. * * *"

The question then is; are the individual operatives who ply their trade, in the establishments of the defendant, in her "employment" as that term is defined in the act? Are the operatives, notwithstanding the so-called rental agreements for the booths, performing services for the defendant under a "contract of hire" as that term is defined in the act? Both questions should be, we think, answered in the affirmative.

The three establishments are operated by the defendant under her own name. She holds out to the public that customers may there secure such services as are usually performed in establishments of that character. The services are performed and paid for in one of the establishments. Presumably a customer—certainly one who is a stranger and who is served by any one of the operatives who happens to be unengaged—knows nothing of the booth-rental arrangement in effect between the operative and the defendant. To all intents and purposes the customer is the customer of the establishment and not of the particular operative who waits

on her. At least some of the receipts go into the treasury of the establishment and are divided between the defendant and the operatives.

Even at common law the existence of the relation of master and servant does not depend upon the payment of wages or a salary by a master direct to the servant. The compensation of the employee may consist of commissions or a share of the profits of the employer's business. 35 Am. Jur., Master and Servant, section 70, p. 501; *Glielmi* v. *Netherland Dairy Co.*, 254 N. Y. 60, 171 N. E. 906. Moreover, the statutory definition of "wages," found in the act and quoted above, includes "commissions and bonuses" and even "gratuities" paid to the worker by a customer.

Nor does the existence of the relation even at common law depend upon how the parties designate each other in their contract. In the recent case of *Texas Co.* v. *Zeigler*, 177 Va. 557, 14 S. E. (2d) 704, we held that the relation of master and servant existed between the parties despite their written contract in which they were stipulated to be merely "consignor" and "consignee." We there pointed out (177 Va., at page 564, 14 S. E. (2d), at page 706) that the determining factor was the right of control.

Hence, in the case before us, neither the existence of the so-called lease arrangement between the defendant and the operatives, nor the manner in which the collections from the customers are divided between the defendant and the operatives, is controlling.

Section 2(j) (6) (1938 Supp. to Code of 1936, section 1887(94) (j) (6) ) contains this significant provision as a guide in determining whether the act should be applied to a given situation:

"(6) Services performed by an individual for remuneration shall be deemed to be employment subject to this act unless;

"(A) such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

"(B) such service is either outside the usual course of the

business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; or such individual, in the performance of such service, is engaged in an independently established trade, occupation, profession or business."

Under this provision, "Services performed by an individual for remuneration" shall be presumed to be "employment" subject to this act unless (A) the individual worker is free from control in fact and free from the right of control; and unless (B) the service is either outside the usual course of the business for which it is performed, or is performed outside of the place of business of the enterprise for which it is performed; or the individual worker, in the performance of the service, is engaged in an independently established trade, occupation, business or profession.

It will be observed that the two exceptions (A) and (B) are in the conjunctive. Therefore, in order to be exempt from the act, the alleged employer must show himself to be under both exceptions.

Moreover, as we pointed out in *Life & Casulty Ins. Co.* v. *Unemployment Compensation Commission, supra* (178 Va., at page 54, 16 S. E. (2d), at page 360), under this provision the burden is upon the alleged employer to prove that he comes within these exceptions and is not subject to the act.

In our opinion the alleged employer has failed to carry this burden. While she has proved that she exercises no control or direction over the performance of the services by the operatives, she has not proved that the right of control does not exist. Indeed, we think, it is a fair inference to be drawn from the evidence that the defendant retains this right of control. As we have seen, the establishments are operated under her name, and a dissatisfied customer means the loss of business to her. She has the right to cancel her arrangement with any operative should the latter not produce at least the weekly sum of $6.00. If unengaged an operative must wait upon such unattached customers as are assigned to her by the cashier. As a further indication of the

right to control, each operative is required to wear a uniform and must remain on duty until her work is done.

When we come to the next exception, there is no proof that the service is "outside the usual course of the business for which such service is performed." On the contrary, it appears that the service is in the usual course of the business of the establishment. Again, the evidence does not show that the "service is performed outside of all the places of business of the enterprise for which the service is performed." On the contrary, such service is performed in one of the places of business. Again, the evidence fails to show that an operative, "in the performance of such service, is engaged in an independently established trade, occupation, business or profession." On the contrary, it shows that the operatives are working in the establishments owned and controlled by the defendant.

On the whole our conclusion is that, whatever may be the relation of the parties at common law, the operatives in the various establishments of the defendant are not in business solely for themselves, as found by the lower court, but are in the defendant's employment within the meaning of the statute.

Although the unemployment compensation acts are of recent origin, there are a great number of borderline cases, such as that before us, involving the question as to whether the relation of employer and employee exists under the various statutes. Undoubtedly the trend of the courts is to recognize the benificent purposes of the acts and to hold the parties bound by them.

In *McDermott* v. *State*, 196 Wash. 261, 82 P. (2d) 568, and in *Young* v. *Bureau of Unemployment Compensation*, 63 Ga. App. 130, 10 S. E. (2d) 412, acts similar to ours were applied to barber shops. In both of these cases it was unsuccessfully claimed that the shops were not operated "on an employer and employee basis," but that the barbers were "independent operators" in that they were mere lessees of the owners of the shops.

*Kaus* v. *Unemployment Compensation Commission*, 230

Iowa 860, 299 N. W. 415, involved a situation strikingly similar to that before us. In that case the question was whether the relation of employer and employee existed between the owner of a taxicab business and his individual drivers. There calls for taxicabs were received at a downtown office and were relayed to drivers at their stands throughout the city. The cabs were owned by the owner of the business, but each was leased to an individual driver who furnished the gasoline, repairs and tires. Each driver paid the owner of the establishment $3.00 for each 12-hour period a cab was in use, and retained as compensation for himself all sums collected by him from passengers in excess of this rental and the cost of the gasoline. The drivers operated when and where they pleased. The arrangement was subject to termination at any time by either party. In applying a statute quite similar to ours, it was held that the relation of employer and employee existed between the owner of the business and the individual drivers.

A like conclusion was reached in the case of *Appeal of Farwest Taxi Service, Inc.* (Wash.), 114 P. (2d) 164.

The judgment complained of will be reversed and the case remanded for further proceedings in conformity with the views here expressed.

*Reversed and remanded.*