Present:  All the Justices

OLUDARE OGUNDE

v.  Record No. 061121     OPINION BY JUSTICE ELIZABETH B. LACY
                                           June 8, 2007
PRISON HEALTH SERVICES,
INC., ET AL.

               FROM THE CIRCUIT COURT OF GREENSVILLE COUNTY
                       Samuel E. Campbell, Judge

     Prison Health Services, Inc. (PHS) provides medical

services to persons incarcerated at certain state correctional

centers, including Greensville Correctional Center, pursuant

to a contract with the Virginia Department of Corrections

(VDOC).  In 2005, Oludare Ogunde was an inmate at Greensville

Correctional Center.  Acting pro se, Ogunde filed a motion for

judgment against PHS and its employees Katie M. Hamlin,

Benjamin Ellis, Joan Hill, RN, and Doctors Amjad Mughal and

Nagash Tesemma (the Employees or the PHS Employees).[1]  In his

complaint, Ogunde alleged that he suffered from a skin

condition diagnosed as "severe acne cysts and acne

keloidalis," and that this condition was aggravated by

shaving.  According to the complaint, PHS and the Employees

denied Ogunde proper medical treatment for his skin condition

_____

     [1] Ogunde also brought a claim against a "Dr. Stephens."
Dr. Stephens was never served and is not a party to this
appeal.

and failed to issue him an exemption from VDOC's inmate grooming policy.[2]

Ogunde's complaint identified seven claims for relief against PHS and the Employees:  negligence or gross negligence; intentional infliction of emotional distress; medical malpractice; breach of contract; cruel and unusual punishment in violation of Section 9, Article I of the Constitution of Virginia; and a violation of his constitutional rights under the Eighth Amendment of the United States Constitution.  Ogunde sought, inter alia, compensatory damages and an injunction requiring PHS and the Employees to provide him medical treatment and to issue him an exemption from the inmate grooming policy.

The trial court dismissed Ogunde's negligence, gross negligence and medical malpractice claims, finding that PHS and the Employees were employees or agents of the Commonwealth, not independent contractors, and as such were entitled to sovereign immunity.  The trial court also dismissed the breach of contract claim finding that there was

---

[2] VDOC's Operating Procedure prohibits male inmates from wearing goatees or beards.  It provides, however, that if an inmate "has a medical condition that is aggravated by shaving or complete removal of facial hair, the offender must receive a 'no shave' medical order from the institutional medical authority.  Offenders who have a 'no shave' medical order must continually trim all facial hair to not exceed 1/4" in length."

no privity; sustained PHS's and the Employees' demurrer to the intentional infliction of emotional distress cause of action; and dismissed Ogunde's state and federal constitutional claims. In addition, the trial court denied Ogunde's motions to amend his motion for judgment and to add the Commonwealth and another PHS physician as party defendants. We awarded Ogunde an appeal and, for the reasons stated below, we will affirm in part and reverse in part the judgment of the trial court and remand the case for further proceedings.

## I. DISMISSED CLAIMS

### A. Medical Malpractice

We begin by reviewing the trial court's dismissal of Ogunde's claims of medical malpractice based on its determination that PHS and the Employees were entitled to sovereign immunity because they were not independent contractors.[3]

In Epperson v. DeJarnette, 164 Va. 482, 486, 180 S.E. 412, 413 (1935), we defined the term "independent contractor" as

> a person who is employed to do a piece of work without restriction as to the means to be employed, and who employs his own labor and undertakes to do the work according to his own ideas, or in accordance with plans

---

[3] The trial court concluded that Ogunde's claims of negligence were in fact medical malpractice claims, and thus limited Ogunde's negligence claim to "medical negligence." Ogunde has not appealed this determination.

3

furnished by the person for whom the work is done, to whom the owner looks only for results.

If a person meets this definition, an independent contractor relationship exists and sovereign immunity is unavailable. Atkinson v. Sachno, 261 Va. 278, 283-84, 541 S.E.2d 902, 904-05 (2001).

We have previously recognized "that there are abundant tests and criteria that can be used to determine whether the relationship between the individual and the Commonwealth is that of an independent contractor or an employee." Id. at 284, 541 S.E.2d at 905. In each case, however, "the individual circumstances . . . play an important part in answering the query." The Texas Co. v. Zeigler, 177 Va. 557, 566, 14 S.E.2d 704, 707 (1941). In determining whether physicians are employees or independent contractors, we have included the following four factors: (1) selection and engagement; (2) payment of compensation; (3) power of dismissal; and (4) power to control the individual's work. See, e.g., Atkinson, 261 Va. at 284-85, 541 S.E.2d at 905; Hadeed v. Medic-24, Ltd., 237 Va. 277, 288, 377 S.E.2d 589, 594-95 (1989); Naccash v. Burger, 223 Va. 406, 418-19, 290 S.E.2d 825, 832 (1982). Although all these factors are relevant, the fourth factor, "the power of control" is determinative. Atkinson, 261 Va. at 284-85, 541 S.E.2d at

4

905; Naccash, 223 Va. at 418-19, 290 S.E.2d at 832.  We apply this analysis to the facts of this case.[4]

PHS and the Employees provided medical services to Ogunde and other Greensville inmates pursuant to a contract with VDOC.[5]  The contract required PHS to "provide all medical, dental, and mental health services" at several Virginia correctional centers including Greensville.  PHS was to render these services in accordance with certain policies set forth by VDOC, including the inmate grooming policy.  PHS and the Employees argue the trial court correctly held that they were not independent contractors under Atkinson, because the contract did not allow them to control the "means and methods used . . . to exercise [their] required professional skill and judgment."  Atkinson, 261 Va. at 283, 541 S.E.2d at 904.  Specifically, PHS and the Employees rely on provisions of the contract that they contend allow VDOC to pre-approve all personnel employed or subcontracted by PHS to deliver care, and require PHS to remove any of its employees with whom VDOC is dissatisfied if attempts to reach a resolution are

---

[4] The PHS and the Employees agree that they are not employees of VDOC but maintain that they are VDOC's agents. We make no distinction between employees and agents in the application of this test to determine independent contractor status.

[5] At oral argument, Ogunde abandoned his argument that the trial court inappropriately relied on the contract, and agreed

unsuccessful.  They also argue that the contract specifies the "circumstances and conditions under which PHS may authorize overtime hours for its employees [and] dictates the number of personnel that must be employed to prevent shortages," and sets forth where inmates may be hospitalized for inpatient care, the methods of delivering off-site medical care, and where PHS must purchase medications and the medications to be prescribed for certain illnesses.

Many of the contract provisions which PHS and the Employees recite relate to issues of security attaching to penal institutions, not to the provision of medical services. The pre-approval of PHS's employees, for example, involves clearance from VDOC based on a background investigation including a criminal records check.  Furthermore, in this context, restrictions such as location for the provision of medical treatment are not dispositive in resolving the question whether PHS and the Employees are independent contractors.  The provisions cited for restricting the medications that can be prescribed are in an amendment to the contract, which sets forth a list of 25 medications for use in the treatment of HIV/AIDS and Hepatitis C.  This amendment,

the contract is dispositive of whether PHS and the Employees are independent contractors.

6

however, is not applicable to treatment at Greensville Correctional Center.

What is crucial to the independent contractor analysis is that the contract specifically charges PHS with supervising the work of its own employees and any subcontractors:

> The Contractor [PHS] shall be responsible for completely supervising and directing the work under this contract and all subcontractors that he may utilize, using his best skill and attention. Subcontractors who perform work under this contract shall be responsible to the prime Contractor. The Contractor agrees that he is as fully responsible for the acts and omissions of his subcontractors and of persons employed by them as he is for the acts and omissions of his own employees.

Thus, as set forth in this provision, the actual work to be performed under the contract – the rendering of medical services to inmates – remains under the control of PHS. The contract provisions related to staffing cited by PHS and the Employees do not undermine this control. For instance, although the contract sets forth staffing requirements, PHS has the responsibility to "manage its workforce so that there is sufficient staffing on each and every shift at each institution in order to assure the delivery of both routine and emergency health care services to all inmates at all times." In short, PHS supervises and directs its employees, not VDOC.

7

The contract to provide medical services was executed in response to VDOC's request for proposals under the Virginia Public Procurement Act, and was the result of a competitive bidding process. Based on that fact and on our review of the contract, we hold that PHS and the Employees are independent contractors. Therefore the trial court erred in concluding that PHS and the Employees were entitled to sovereign immunity. Accordingly, we will reverse that portion of the trial court's judgment dismissing Ogunde's medical malpractice claims on this basis.[6]

### B.  Breach of Contract

Ogunde also assigns error to the trial court's dismissal of his breach of contract claim because he was not in privity with PHS. Ogunde argues that he is an intended third party beneficiary of the contract between PHS and VDOC and, as such, entitled to sue for breach of the contract.

It is well established that "under certain circumstances, a party may sue to enforce the terms of a contract even though he is not a party to the contract." Levine v. Selective Ins.

---

[6] Ogunde also assigns error to the trial court's dismissal of his gross negligence claim, which was apparently dismissed as a result of the trial court's determination that PHS and the Employees were entitled to sovereign immunity. Reversal of that holding and reinstatement of the medical malpractice claim necessarily reinstates Ogunde's claim of gross negligence and we therefore need not address Ogunde's assignment of error on this issue.

Co. of Am., 250 Va. 282, 285, 462 S.E.2d 81, 83 (1995); Code § 55-22. "The essence of a third-party beneficiary's claim is that others have agreed between themselves to bestow a benefit upon the third party but one of the parties to the agreement fails to uphold his portion of the bargain." Copenhaver v. Rogers, 238 Va. 361, 367, 384 S.E.2d 593, 596 (1989). In accordance with this principle, we have allowed third parties to sue on contracts where "the third party . . . show[s] that the parties to the contract clearly and definitely intended it to confer a benefit upon him." Ward v. Ernst & Young, 246 Va. 317, 330, 435 S.E.2d 628, 634 (1993) (quoting Professional Realty Corp. v. Bender, 216 Va. 737, 739, 222 S.E.2d 810, 812 (1976)).

The contract between PHS and VDOC states that its purpose is to "provide cost effective, quality inmate health care services for up to approximately 6,000 inmates (initially) housed at four correctional center facilities," including Greensville. The contract then sets forth the scope of health care services to be provided to the inmates. Ogunde is one of these inmates and PHS's performance under the contract renders a direct benefit to Ogunde. The contract thus "clearly and definitely" indicates that PHS and VDOC intended to provide a benefit to, among others, Ogunde. Bender, 216 Va. at 739, 222 S.E.2d at 812.

PHS and the Employees argue that Ogunde is not an intended beneficiary but merely an "incidental" beneficiary of the contract because if he ceases to be an inmate at Greensville, the contract, and the duties imposed on PHS, will remain intact. As an incidental beneficiary, Ogunde does not have standing to enforce the contract according to PHS and the Employees.

We disagree with the proposition that Ogunde is an incidental beneficiary. The status of an intended third party beneficiary does not depend upon permanent membership in the class of persons entitled to receive the benefit of the contract. In Moorman v. Nationwide Mut. Ins. Co., 207 Va. 244, 148 S.E.2d 874 (1966), we held that a person injured while riding as a passenger in a motor vehicle was entitled to recover pursuant to an insurance policy held by the owner of the vehicle, which obligated the insurer to pay for medical expenses incurred by any person "while occupying" the insured vehicle. We reasoned that the insurance policy had the effect of placing the injured person "in the position of a third party beneficiary, and as such, [the injured person] has in Virginia a statutory right to maintain an action on the contract in his own name." Id. at 248, 148 S.E.2d at 877. We reached this conclusion despite the fact that once the injured person was no longer a passenger in the vehicle, she ceased to

10

be a member of the class of persons who would benefit from the contract, which would remain in force, subject to its other provisions. Accord Owens v. Haas, 601 F.2d 1242, 1250-51 (2d Cir.), cert. denied, 444 U.S. 980 (1979) (reversing dismissal of inmate's breach of contract claim because contract between prison and the county to provide transportation of prisoners "indicates that Owens, as a federal prisoner, was intended to benefit from the agreement").

Accordingly, we hold that Ogunde was a third party beneficiary of the contract between PHS and VDOC and the trial court erred by dismissing Ogunde's breach of contract claim.

### C.  State Constitutional Claim

Ogunde alleged that the failure to provide appropriate medical treatment was cruel and unusual punishment in violation of Art. I, § 9 of the Constitution of Virginia.  In response to this claim, PHS and the Employees originally asserted that the claim was barred by the doctrines of res judicata and collateral estoppel.  PHS and the Employees subsequently withdrew their objections on these grounds.  The dismissal order does not recite the basis for dismissal of the constitutional claim.

On appeal, PHS and the Employees argue that the trial court was justified in dismissing Ogunde's constitutional claim because Ogunde failed to comply with the Virginia Prisoner

11

Litigation Reform Act (VPLRA), Code §§ 8.01-689, et seq. PHS and the Employees assert that Code § 8.01-694 of the VPLRA requires a prisoner to submit documentation or affidavits to support his claim, and that failure to do so allows the trial court to dismiss the pleading sua sponte.

Code § 8.01-694 does not require dismissal of a prisoner's claim if the prisoner has not attached all supporting documentation to the complaint. Rather, the provision simply describes circumstances which "may" result in the dismissal of the claim. Nothing in the VPLRA changes the rules governing pleadings and motions in Virginia. The Act does not require the filing of additional documentation or affidavits with a pleading. Regardless whether a trial court believes a claim brought by a pro se prisoner may ultimately fail, at the pleading stage the trial court is bound by the same procedures, rules and policies which apply to a party represented by counsel. The VPLRA does not provide courts or defendants with a mechanism to disregard these procedures in a suit brought by a pro se prisoner, and we reject the application of the Act suggested by PHS and the Employees. In this case, there is nothing in the record to support the dismissal of Ogunde's constitutional claim at the pleading stage, and we accordingly reverse that portion of the trial court's judgment.

12

D.   Intentional Infliction of Emotional Distress

Ogunde challenges the trial court's action sustaining PHS's and the Employees' demurrer to his claim of intentional infliction of emotional distress.  A demurrer tests the legal sufficiency of the facts alleged in the plaintiff's complaint. Sanchez v. Medicorp Health Sys., 270 Va. 299, 303, 618 S.E.2d 331, 333 (2005).  In reviewing a demurrer, a trial court must consider the pleadings in the light most favorable to the plaintiff and sustain the demurrer if it is clear that the plaintiff has not stated a valid cause of action.  Id.  To survive a demurrer as to the instant claim, a plaintiff must allege:  "1) the wrongdoer's conduct was intentional or reckless; 2) the conduct was outrageous or intolerable; 3) there was a causal connection between the wrongdoer's conduct and the resulting emotional distress; and 4) the resulting emotional distress was severe."  Almy v. Grisham, 273 Va. 68, 77, 639 S.E.2d 182, 186 (2007).

Ogunde alleged in his complaint that PHS and the Employees denied him treatment and refused to recommend he be exempted from the grooming policy because they believed the importance of Ogunde's compliance with the grooming policy outweighed any medical need for an exemption and because they erroneously believed "they lack[ed] authority to make such a recommendation."  Assuming the truth of the allegations, the

13

conduct is not so intolerable or outrageous such that it "offends against the generally accepted standards of decency and morality." Jordan v. Shands, 255 Va. 492, 498, 500 S.E.2d 215, 219 (1998)(quoting Womack v. Eldridge, 215 Va. 338, 342, 210 S.E.2d 145, 148 (1974)).  And, while Ogunde did allege that their conduct was both intentional and reckless, we are not bound to accept conclusory allegations in a review of a demurrer to an intentional infliction of emotional distress claim.  Id. at 499, 500 S.E.2d at 219 (plaintiff failed to plead cause of action for emotional distress where her allegations were "merely conclusional" and did not set forth any specific conduct by defendants); Russo v. White, 241 Va. 23, 28, 400 S.E.2d 160, 163 (1991)(the court is not "bound by such conclusory allegations" in considering demurrer to infliction of emotional distress claim).  Accordingly, we find no error by the trial court in sustaining the demurrer.

II.  DENIAL OF MOTIONS TO AMEND AND TO ADD NEW PARTIES

Following the trial court's ruling sustaining the demurrer to Ogunde's intentional infliction of emotional distress claim, dismissing his breach of contract claim, and consolidating his negligence claims with his medical malpractice claim, discovery continued and PHS and the Employees filed their pleas of sovereign immunity.  In response, Ogunde filed two motions, one to add the

Commonwealth as a party defendant and a second to amend his motion for judgment to "cure the imperfections" in his prior pleading and to add new counts and a claim for punitive damages. Ogunde asserted the amendments resulted from matters arising in discovery and that PHS and the Employees would not be prejudiced by allowing the proposed amendments. A copy of the amended motion for judgment was attached to the motions to amend. PHS and the Employees did not file any written opposition to the proposed amendments. Following a hearing, the trial court denied Ogunde's motions, granted the sovereign immunity plea, and dismissed Ogunde's motion for judgment. Ogunde has assigned error to the trial court's denial of his motions to amend.

Ogunde's stated reason for adding the Commonwealth as a party and including a claim under the Virginia Tort Claims Act was in response to PHS's and the Employees' claim of sovereign immunity. In light of our holding that PHS and the Employees are independent contractors and not entitled to sovereign immunity, these amendments are no longer necessary and we need not address Ogunde's arguments directed to that part of the trial court's ruling.

PHS and the Employees raise a number of arguments in support of the trial court's exercise of its discretion in denying the remaining amendments. They again assert that

Ogunde did not satisfy the pleading requirements of the VPLRA because he did not provide "written documentation to support his claim." We have already rejected that construction of Code § 8.01-694 and reject it again here as a basis for refusing the amendments sought. PHS and the Employees also claim that certain counts were barred by the statute of limitations and that venue was improper. These arguments may be defenses to the claims but were not resolved by the trial court, and thus are not appropriate as a basis for denying the amendments.

Whether to grant leave to amend pleadings is a matter within the sound discretion of the trial court. Kole v. City of Chesapeake, 247 Va. 51, 57, 439 S.E.2d 405, 409 (1994). "Leave to amend shall be liberally granted in furtherance of the ends of justice." Rule 1:8. Ogunde had not previously sought to amend his motion for judgment and filed this request in a timely manner, following the relevant rulings of the trial court and the conclusion of discovery. Nothing in the amendments suggests that PHS and the Employees would have been prejudiced by allowing the amendments. Under these circumstances, Ogunde provided good cause to seek to amend his complaint. See Ford Motor Co. v. Benitez, 273 Va. 242, 252, 639 S.E.2d 203, 208 (2007); Mortarino v. Consultant Eng'g Servs., 251 Va. 289, 295-96, 467 S.E.2d 778, 782 (1996).

Accordingly, we find that the trial court abused its discretion in failing to allow Ogunde to file his amended motion for judgment.

CONCLUSION

In sum, we hold that the trial court erred in holding that PHS and the Employees were entitled to sovereign immunity and in dismissing Ogunde's medical malpractice and gross negligence claims on that basis, and in dismissing Ogunde's claims for breach of contract and violation of Article I, § 9 of the Constitution of Virginia. We further hold that the trial court abused its discretion by denying Ogunde leave to amend his complaint. We find no error by the trial court in sustaining the demurrer to Ogunde's claim for intentional infliction of emotional distress.

For these reasons, we will affirm in part and reverse in part the circuit court's judgment and remand the case for proceedings not inconsistent with this opinion.

<u>Affirmed in part,
reversed in part,
and remanded.</u>

17