COURT OF APPEALS OF VIRGINIA

**PUBLISHED**

Present:    Judges Chaney, Frucci and Senior Judge Annunziata
Argued by videoconference


KASHYAP P. PATEL

v.        Record No. 1573-23-4

CABLE NEWS NETWORK, INC.

OPINION BY
JUDGE ROSEMARIE ANNUNZIATA
JANUARY 21, 2025

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Tania M.L. Saylor, Judge

Jesse R. Binnall (Jason C. Greaves; Binnall Law Group, on briefs),
for appellant.

Katherine M. Bolger (John D. McGavin; McGavin, Boyce, Bardot,
Thorsen & Katz, PC; Davis, Wright Tremaine LLP, on brief), for
appellee.


Kashyap P. Patel, an attorney and former official in President Donald J. Trump's first

administration, sued Cable News Network, Inc. (CNN) for defamation relating to two articles

published in November and December 2020.  CNN owns and operates numerous news platforms

and services, including the U.S. television network known as CNN and the website

www.cnn.com.  Generally, Patel alleged in an amended[1] complaint that CNN defamed him by

reporting that the House Permanent Select Committee on Intelligence (Intelligence Committee)

had uncovered evidence that "connected" him to President Trump's efforts to (1) spread

conspiracy theories about then-Vice President Joseph R. Biden, Jr. and (2) coerce Ukraine into

announcing an investigation into Vice President Biden and his son, Hunter Biden.  The Circuit

---

[1] The circuit court sustained a demurrer to Patel's original complaint and granted him
leave to amend.  Although his original complaint named CNN and the various authors of the two
articles as defendants, his amended complaint named only CNN as a defendant; his claims
against the specific authors were dismissed by nonsuit.

Court of Fairfax County found, among other things, that Patel was a public official and had failed to plead that CNN published the challenged statements with actual malice. Accordingly, the circuit court sustained CNN's demurrer and dismissed Patel's suit with prejudice.

It is undisputed that Patel is a public official and the challenged statements involve a media company's reporting on a widely publicized political issue. Thus, for Patel's claims to survive demurrer, he was obliged to allege facts with "sufficient definiteness to enable" the conclusion that CNN published the challenged statements with actual malice. *A.H. ex rel. C.H. v. Church of God in Christ, Inc.*, 297 Va. 604, 613 (2019) (quoting *Squire v. Va. Hous. Dev. Auth.*, 287 Va. 507, 514 (2014)); *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964) (quoting *Whitney v. California*, 274 U.S. 357, 375 (1927)). Yet his amended complaint was comprised of unspecified conclusions, contradicted by the attached documents, and did not otherwise allege specific instances of conduct "sufficient . . . to enable [a] court to find the existence of a legal basis for its judgment." *A.H.*, 297 Va. at 613 (quoting *Squire*, 287 Va. at 514). Because the allegations, viewed in the light most favorable to Patel, failed to overcome the exacting constitutional standards protecting the challenged statements, we affirm the circuit court's judgment.

BACKGROUND

In reviewing the circuit court's judgment, "we accept as true all factual allegations expressly pleaded in the complaint and interpret those allegations in the light most favorable to" Patel. *Coward v. Wellmont Health Sys.*, 295 Va. 351, 358 (2018). We also accept as true "the facts that are revealed by the exhibits attached to the [complaint], and the facts that reasonably may be inferred from those sources." *Goode v. Burke Town Plaza*, 246 Va. 407, 408 (1993). "But we are not bound by the [complaint's] conclusions of law that are couched as facts." *Theologis v. Weiler*, 76 Va. App. 596, 600 (2023). Nor are we bound by "conclusory allegations" that are not supported

- 2 -

by instances of "specific conduct." *Ogunde v. Prison Health Servs.*, 274 Va. 55, 66 (2007) (citing *Jordan v. Shands*, 255 Va. 492, 499 (1988)).[2]

Patel "began his legal career as a public defender" and later became "a terrorism prosecutor at the Department of Justice (DOJ)." After President Trump's election in 2016, Patel served in various roles in his administration. As the Principal Deputy to the Acting Director of National Intelligence, Patel "oversaw the operations of all 17 Intelligence Community . . . agencies and provided the President's Daily Briefing." And as the National Security Advisor and Senior Counsel on the Intelligence Committee, Patel "spearheaded the investigation into the Russian active measures campaign to influence the 2016 Presidential election." While serving on the Intelligence Committee from 2017 to 2018, Patel worked with then-Chairman Congressman Devin Nunes investigating abuses of the Foreign Intelligence Surveillance Act. His work resulted in a January 2018 memorandum to the Intelligence Committee's Republican members (Nunes Memo), which Patel "was instrumental in drafting."[3]

After Patel left the Intelligence Committee, it began investigating allegations that President Trump had solicited the interference of a foreign government into the 2020 presidential election. In December 2019, the Intelligence Committee, then chaired by Representative Adam B. Schiff, released the Trump-Ukraine Impeachment Inquiry Report (the Ukraine Report). The

---

[2] As we are reviewing the circuit court's judgment sustaining a demurrer, "[o]ur recitation of the facts, of course, restates only factual allegations that [remain] wholly untested by the adversarial process." *A.H.*, 297 Va. at 614.

[3] The Nunes Memo reported that before the 2016 presidential election, the Hillary Clinton Campaign and the Democratic National Committee had paid Christopher Steele, a former British intelligence officer, to draft a dossier (Steele dossier) "to obtain derogatory information on Donald Trump's ties to Russia." Steele had admitted that he "was desperate that Donald Trump not get elected and was passionate about him not being president," and former-FBI Director James Comey described Steele's dossier as "salacious and unverified." Nevertheless, the DOJ and FBI used the Steele dossier to obtain a "probable cause order" from the Foreign Intelligence Surveillance Court to surveil a member of the Trump campaign team for purported collusion with Russia while concealing the dossier's origins from the court.

Ukraine Report found that President Trump, "acting personally and through his agents within and outside of the U.S. government," "directly requested" that "the government of Ukraine publicly announce investigations into (1) the President's political opponent, former Vice President Biden and his son, Hunter, and (2) a baseless theory promoted by Russia alleging that Ukraine—rather than Russia—interfered in the 2016 U.S. election."[4]  According to the Ukraine report, President Trump "pressed" Ukrainian President Volodomyr Zelensky to "consult" with Trump's personal attorney, Rudolph Giuliani, "to initiate these specific investigations."  The approximately 300-page Ukraine Report details what the authors considered to be evidence supporting its findings and allegations.  It names Patel in two subsections.[5]

---

[4] The sought-after investigation into then-Vice President Biden centered on his alleged involvement with "a Ukrainian gas company called Burisma, on which [Hunter] sat on the board."  President Trump allegedly had asked Ukrainian President Zelensky "'to look into' former Vice President Biden's role in encouraging Ukraine to remove a prosecutor widely viewed by the United States and numerous European partners to be corrupt," whereas President Trump considered the prosecutor to be "very good" and "very fair."

[5] The first subsection that names Patel is entitled, "Rudy Giuliani Was 'Meddling in an investigation' on Behalf of President Trump."  That subsection recounts a Ukraine trip Giuliani intended to make on "behalf" of President Trump to "ask[] them to do an investigation" into the "debunked story that Vice President Biden had improperly pressured Ukraine to fire a corrupt prosecutor" and the "Russian-backed conspiracy that the Ukrainians interfered in the 2016 U.S. election."  On May 10, 2019, amid media coverage surrounding the planned trip, Giuliani exchanged a series of phone calls with several individuals, including the United States Special Ambassador for Ukraine Negotiations, Kurt Volker.  Ambassador Volker warned Giuliani that the Ukrainian prosecutor was "not credible" and that Giuliani should not "listen to what he is saying."  Giuliani and Patel had been "trading aborted calls" on May 10, 2019.  And shortly after the call with Ambassador Volker, Giuliani and Patel "connected" and spoke for 25 minutes.  At that time, Patel was "an official at the National Security Council."  Five minutes after speaking to Patel, Giuliani spoke to two other individuals.

The second subsection is entitled, "U.S. Officials Briefed President Trump About Their Positive Impressions of Ukraine."  That subsection reported that the U.S. Ambassador to the European Union Gordon Sondland and Ambassador Volker scheduled a meeting with President Trump after they returned from a Ukraine trip to attend President Zelensky's inauguration.  National Security Council Director for Ukraine Lt. Col. Alexander Vindman also attended, "represent[ing] the White House."  Nevertheless, the White House instructed Lt. Col. Vindman not to attend the meeting because "'there was some confusion' from the President 'over who the NSC] director for Ukraine [was].'"

In December 2019, CBS News published an article based in part on the Ukraine Report entitled, "White House staffer Kash Patel denies he was back channel to Trump on Ukraine." Discussing the Ukraine Report, the CBS News article noted that witness testimony before the Intelligence Committee had "suggested [Patel] may have been part of a back channel to the president on Ukraine," that Giuliani's call logs demonstrated that Patel "spoke with . . . Giuliani" shortly "before nearly $400 million in military aid to Ukraine was suspended," and that five minutes after that call, Giuliani "spoke with an unidentified number for 17 minutes and then with . . . Parnas, a Ukrainian-American who has been accused of . . . aiding Giuliani in his Ukraine investigations." Moreover, CBS News reported that an Intelligence Committee spokesperson had characterized Dr. Hill's testimony as demonstrating that "Patel was providing information to the President on Ukraine as part of an alternate channel," and stated that Patel's "call [with Giuliani] took place right around that time." Patel denied the Ukraine Report's allegations and told CBS News that his call with Giuliani was "personal" and the Democrats were attempting to "castigate [his] name and reputation." Speaking of the Ukraine Report, Patel stated that he was "never a back channel to President Trump on Ukraine matters, at all, ever. Never—no meetings, no shuttling of documents, no meetings in secret. Never happened. I have no idea where they got that from."

---

Dr. Fiona Hill, the Deputy Assistant to the President and Senior Director for Europe and Russian Affairs at the NSC, testified before the Intelligence Committee that (1) "President Trump had requested to speak with the NSC's Ukraine director about unspecified 'materials'"; and (2) "[a] member of the NSC executive secretary's staff stated that in response to the President's request, 'we might be reaching out to [Patel],'" who "then served as the director of the NSC's directorate of International Organizations and Alliances, not the directorate of Europe and Russia." Dr. Hill "sought to clarify if . . . Patel 'had some special . . . representational role on Ukraine' that she had not been informed about, but 'couldn't elicit any information about that.'" The Ukraine Report stated that Dr. Hill "never saw or learned more about the Ukraine-related 'materials' that the President believed he had received from . . . Patel, who maintained a close relationship with [Congressman] Nunes after leaving his staff to join the NSC."

- 5 -

On November 24, 2020, following President Biden's victory in the 2020 presidential election, CNN published an article authored by Barbara Starr and Zachary Cohen entitled, "Trump loyalist connected to Biden conspiracy theories is leading Pentagon transition." Generally, the article reported that Patel was "put in charge of the Pentagon transition effort" to "oversee coordination with the incoming Biden-Harris administration" and that "many inside the Pentagon" were "watching to see how cooperative [Patel would] be with the Biden team." Patel alleges that the article defamed him by stating:

- "Patel [is] a Trump loyalist who was connected to efforts to spread conspiracy theories about Joe Biden"; and

- "The House impeachment inquiry uncovered evidence connecting Patel, who was then working as an aide to Nunes, to the diplomatic back channel led by Trump attorney Rudy Giuliani, and the efforts to spread conspiracy theories about Joe Biden and coerce Ukraine into announcing an investigation of the former vice president."[6]

On December 5, 2020, CNN published another article authored by Alex Marquardt, Ryan Browne, and Nicole Gaouette entitled, "Pentagon blocked Biden's intelligence transition team from meeting with agencies." Patel alleges that the article defamed him by stating:

- "The Washington Post first reported on the Biden team's problems with the Defense Department transition office, which is led by a Trump loyalist connected to efforts to spread conspiracy theories about the President-elect."

Patel sued CNN for "defamation and defamation by implication" based on the above statements. In his amended complaint, Patel alleged that the statements were "false," contained "defamatory implications," part of CNN's "pattern of retaliation" against him, and "a continuation of past smear campaigns to discredit [him] (and [Congressman] Nunes)." The

---

[6] Initially, Patel also alleged that the article defamed him by stating that he "worked to discredit Special Counsel Robert Mueller's probe into Russian interference in the 2016 presidential election." But at oral argument before this Court, Patel abandoned his claims related to that statement.

- 6 -

statements were "republished millions of times in Virginia, and "[t]he millions who read" the statements "understood them to convey a defamatory meaning or defamatory implication, including that [Patel] played a role, participated in or aided and abetted an impeachable offense . . . , and engaged in dishonest, deceptive, unethical and improper conduct."

The amended complaint alleged that the challenged statements were "fabricated" and "knowingly false." CNN "had multiple agents who were present during the House impeachment inquiry," "saw transcripts of testimony and reports of the impeachment proceedings," and had "read the Democrats' Ukraine Report." Accordingly, CNN knew that "no evidence was uncovered" connecting him to Trump's "diplomatic back channel led by . . . Giuliani to spread conspiracy theories[]" or "coerce Ukraine into announcing an investigation" of the Bidens. Moreover, "CNN knew from its review of public records prior to publication . . . that [he] was not the source of a single conspiracy theory and had no connection to the dissemination of *any* conspiracy theory about Biden." The amended complaint also alleged that CNN's articles "provided no evidence or any example of any misinformation or disinformation" he had spread "about Joe Biden because there [was] none" and that his phone call with Giuliani was "personal." Further, CNN knew he had "*denied* ever being a 'back channel' to President Trump on Ukraine," as reported in the CBS News article.

Patel's complaint also alleged that the Nunes Memo he had produced exposed and contradicted much of CNN's prior reporting, which "was deeply invested in promoting the Russia collusion hoax and the fraudulent 'dossier' manufactured" for the Hillary Clinton Campaign and the Democratic National Committee. CNN had "published hundreds of articles that asserted and implied that [the] collusion was real." CNN also had "repeatedly defended the veracity of the 'dossier' and represented to the American public that the 'intelligence' memoranda in the 'dossier' were real and had been 'corroborated' by the 'intel community.'"

Consequently, Patel alleged, "CNN held a grudge against" him and sought to "discredit" him by engaging in "a general pattern of retaliation and discrimination."

Patel also alleged that CNN published the statements with "actual malice" because it knew the statements "were false or [published them] with reckless disregard for whether they were false." The amended complaint alleged that CNN had (1) "manufactured the [s]tatements out of whole cloth," (2) "ignored its own prior reporting and reliable information that contradicted its libelous assertions," and (3) "abandoned all journalistic integrity and violated its own code of ethics in order to further the false narratives about [Patel]" without sourcing its statements and instead relying on hearsay. And CNN published the false statements "to sensationalize the 'news'" and "insult, embarrass and humiliate" Patel. Indeed, CNN allegedly "harbored extreme professional and personal animus, bias, spite and ill-will towards [Patel] as a result of [his] revelations" in the Nunes Memo "of CNN's corrupt business practices and deceitful misreporting," leading it to "knowing[ly] and recklessly ignore[] the probable falsity of the story it printed anyway." Finally, the amended complaint asserted that "CNN brazenly republished the false and defamatory [s]tatements about [Patel] after [it] was informed that [he] contended the [s]tatements were false," demonstrating that it "purposefully avoided . . . the truth."

The circuit court granted CNN's motion craving oyer, without objection from Patel, to make part of the record the documents Patel had mentioned in his complaint and which were relevant to the review of the challenged statements: the Nunes Memo, the Ukraine Report, the two CNN articles, and the CBS News article. CNN then demurred, arguing in relevant part that Patel was "an admitted public official" and had not "sufficiently [pleaded] that CNN acted with actual malice." CNN argued that the Ukraine Report directly supported the challenged statements because it in fact "connected" Patel to Giuliani's "back channel" communications,

- 8 -

and Patel's "mere denials" of the connection in the CBS News article did "not support an inference" that CNN acted with "actual malice." CNN also contended that the allegations that it "bore Patel personal ill will" were insufficient to establish actual malice. In response, Patel did not contest that he was a public official who was obliged to plead that CNN acted with actual malice. Instead, he maintained that the aggregate of his allegations, taken as true, satisfied that burden.

The circuit court sustained the demurrer, finding in relevant part that Patel had failed to plead actual malice because he did not sufficiently allege that CNN had "actual or constructive knowledge that [the statements] were false" or published them "with reckless disregard for whether they were false." The court ruled that Patel's "bare conclusory allegation that [CNN] acted with actual malice" was "without factual support" and "insufficient to withstand demurrer."[7] Patel appeals.

ANALYSIS

We review de novo the circuit court's judgment sustaining a demurrer. *Theologis*, 76 Va. App. at 603. Under Virginia law, "[t]he purpose of a demurrer is to determine whether the pleading *and any proper attachments* state a cause of action upon which relief can be given." *Young-Allen v. Bank of Am.*, 298 Va. 462, 467 (2020) (emphasis added) (quoting *Steward v. Holland Fam. Props., LLC*, 284 Va. 282, 286 (2012)). "A demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof." *Seymour v. Roanoke Cnty. Bd. of Supervisors*, 301 Va. 156, 164 (2022) (quoting *Coutlakis v. CSX Transp., Inc.*, 293 Va. 212, 216 (2017)). Thus, "[i]n deciding whether to sustain a demurrer, the sole question . . . is whether the

---

[7] The circuit court also found that the complaint (1) failed to assert allegations of specific harm and that the alleged defamatory statements did not constitute defamation per se, (2) that the challenged statements were protected by Virginia's Fair Reporting Privilege as substantially accurate reporting of the Ukraine Report, and (3) that the complaint failed to "identify the 'words actually used' that give rise to the defamatory implication."

facts pleaded, implied, and fairly and justly inferred are legally sufficient to state a cause of action against a defendant." *Pendleton v. Newsome*, 290 Va. 162, 171 (2015). As noted above, however, well-established principles of Virginia law provide that "we are not bound by the [complaint's] conclusions of law that are couched as facts" when reviewing a demurrer. *Theologis*, 76 Va. App. at 600. Consequently, a complaint will not survive demurrer merely because it recites the applicable legal standard and concludes that it was met. *Id.*; *Gilmore v. Jones*, 370 F. Supp. 3d 630, 673 (W.D. Va. 2019). Nor are we bound by a complaint's "conclusory allegations" that are not supported by instances of "specific conduct." *Ogunde*, 274 Va. at 66 (citing *Jordan*, 255 Va. at 499).

"In recognition of the importance of safeguarding an individual's basic entitlement to the uninterrupted enjoyment of his or her reputation, Virginia law allows a person who has been the subject of libel or slander to bring a cause of action for defamation." *Jackson v. Hartig*, 274 Va. 219, 227 (2007) (citing *Tronfield v. Nationwide Mut. Ins. Co.*, 272 Va. 709, 713 (2006)). *See also Schaecher v. Bouffault*, 290 Va. 83, 91 (2015) ("Virginia makes no distinction between actions for libel and slander." (quoting *Shupe v. Rose's Stores, Inc.*, 213 Va. 374, 375-76 (1972)). A plaintiff may recover for "defamation by publication" if he demonstrates "'(1) publication of (2) an actionable statement with (3) the requisite intent.'" *Schaecher*, 290 Va. at 91 (quoting *Tharpe v. Saunders*, 285 Va. 476, 480 (2013)). "To be actionable, the statement must be both false and defamatory." *Jordan v. Kollman*, 269 Va. 569, 575 (2005) (citing *M. Rosenberg & Sons v. Craft*, 182 Va. 512, 518 (1944)). "True statements do not support a cause of action for defamation." *Id.* (citing *Am. Commc'ns Network, Inc. v. Williams*, 264 Va. 336, 337 (2002)). Neither do "statements of opinion" because they "cannot be objectively characterized as true or false." *Id.* (citing *Fuste v. Riverside Healthcare Ass'n, Inc.*, 265 Va. 127, 132-33 (2003)). To be defamatory, a statement must "tend[] . . . to harm the reputation of [the

plaintiff] as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Schaecher*, 290 Va. at 91-92 (quoting Restatement (Second) of Torts § 559).

Yet "the right to seek legal redress for another's defamatory statements is constrained by the protections of free speech established in the First Amendment to the United States Constitution and Article I, Section 12 of the Constitution of Virginia." *Jackson*, 274 Va. at 228 (citing *Yeagle v. Collegiate Times*, 255 Va. 293, 295 (1998)). The need to carefully balance the right to enjoy one's reputation against those constitutional protections is at its zenith in cases like this one, involving public questions about public officials. *Sullivan*, 376 U.S. at 269-70 (quoting *Whitney*, 274 U.S. at 275-76). *Cf. Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 343-49 (1974) (comparing "public persons," who have exposed themselves to increased defamatory injury, to "private persons," who have not). Our country has "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open"; that commitment must be honored even when—indeed, especially when—the debate includes "vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *Sullivan*, 376 U.S. at 270 (citing *Terminiello v. Chicago*, 337 U.S. 1, 4 (1949)).

Inevitably, passionate discourse will include "erroneous statement[s]" as those engaged in the debate may "'resort[] to exaggeration'" or even "'vilification'" "'[t]o persuade others to [their] own point,'" for "'[s]ome degree of abuse is inseparable from the proper use of everything.'" *Id.* at 271 (first quoting *Cantwell v. Connecticut*, 310 U.S. 296, 310 (1940); and then quoting 4 Elliot's Debates on the Federal Constitution (1876), p. 571). As a nation, we accept that even the erroneous statements—inherent in vigorous public speech—"must be protected if the freedoms of expression" we cherish "are to have the 'breathing space' that they 'need . . . to survive.'" *Id.* at 271-72 (alteration in original) (quoting *N.A.A.C.P. v. Button*, 271

- 11 -

U.S. 415, 433 (1963)).  Thus, any "rule compelling the critic of official conduct to guarantee the truth of all his factual assertions . . . on pain of libel judgments" is anathema because it would restrict free expression as would-be speakers engage in "self-censorship" of their speech.  *Id.* at 279.  Accordingly, a public official may not "recover[] damages for defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false."  *Id.* at 279-80.

Although "the concept of 'reckless disregard' 'cannot be fully encompassed in one infallible definition,'" *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 730 (1968)), it entails "more than a departure from reasonably prudent conduct," *Jordan*, 269 Va. at 580 (quoting *Harte-Hanks*, 291 U.S. at 688).  The proper question is not "whether a reasonably prudent man would have published, or would have investigated before publishing."  *St. Amant*, 390 U.S. at 731.  Rather, a public official shows a reckless disregard for a statement's falsity through evidence "that the defendant *in fact entertained* serious doubts as to the truth of his publication" and disregarded them.  *Id.* (emphasis added).  The defendant must have "actually had a high degree of awareness of [the statements'] *probable* falsity."  *Jordan*, 269 Va. at 580 (emphasis added) (quoting *Harte-Hanks*, 491 U.S. at 688).

Under that rule, the Supreme Court of Virginia has held that a media company does not act with actual malice merely by "fail[ing] to investigate the accuracy of an allegedly defamatory statement before publishing it."  *Jackson*, 274 Va. at 229 (quoting *Shenandoah Publ'g House, Inc. v. Gunter*, 245 Va. 320, 324 (1993)).  Indeed, even if "a reasonably prudent man . . . *would have* investigated" the allegations "before publishing," the failure to do so does not demonstrate actual malice.  *Id.* at 230 (emphasis added) (quoting *St. Amant*, 390 U.S. at 731).  Rather, a "duty

- 12 -

to investigate the accuracy of one's statements" in the context of a public official "does not arise until the publisher . . . has a high degree of *subjective* awareness of their *probable* falsity." *Id.* (emphases added) (citing *Harte-Hanks*, 491 U.S. at 688).

Moreover, because the actual malice standard is subjective, the requisite "state of mind required for actual malice" must be "brought home" to the minds of a person or persons in a media company who are responsible "for the publication" of the defamatory statements. *Sullivan*, 376 U.S. at 287; *Harte-Hanks*, 491 U.S. at 688 (stating that the actual malice "standard is a subjective one"). Even if a media company has published prior articles with contradictory facts, that circumstance does not demonstrate that the company "knew" a subsequent defamatory statement was false or published the statement with a reckless disregard to its veracity. *Sullivan*, 376 U.S. at 287. A public official must provide facts that "speak to [a person's] *state of mind* at the time he published" the statement. *Jackson*, 274 Va. at 231 (emphasis added). And that state of mind must "in fact [have] entertained serious doubts as to the truth of [the] publication." *Id.* at 230 (quoting *St. Amant*, 390 U.S. at 731).

As a public official, Patel rightly does not contest that his complaint was obliged to allege facts sufficient to overcome the actual malice standard to survive demurrer. To meet that demanding burden, Virginia law required his complaint to include more than "conclusions of law that are couched as facts." *Theologis*, 76 Va. App. at 600; *Hubbard v. Dresser*, 271 Va. 117, 122 (2006). Similarly, "conclusory allegations" that amount to a mere recitation of the actual malice standard without "set[ting] forth any specific conduct by" persons at CNN do not meet the burden. *Ogunde*, 274 Va. at 66 (citing *Jordan*, 255 Va. at 498). Instead, Patel was obliged to allege facts with "sufficient definiteness to enable the court to find the existence of a legal basis for [a] judgment" in his favor. *Rafalko v. Georgiadis*, 290 Va. 384, 396 (2015) (quoting *Eagle Harbor, L.L.C. v. Isle of Wight Cnty.*, 271 Va. 603, 611 (2006)); *A.H.*, 297 Va. at 613. For "[i]t

- 13 -

is an elementary rule that a declaration must allege *material facts* sufficient to show a complete right of action in the plaintiff." *Craft v. Moloney Belting Co.*, 117 Va. 480, 484 (1915) (emphasis added).

To be material and justify a finding of a legal basis for a judgment, Patel's alleged facts had to be calibrated to the exacting actual malice standard that the United States Supreme Court established for public officials seeking damages for defamation. *See Rafalko*, 290 Va. at 396; *Sullivan*, 376 U.S. at 279-80. Thus, it would not be sufficient that Patel's complaint contained a plethora of detailed factual allegations if those allegations targeted merely CNN generally as a media company, as such allegations do not address the actual malice standard's subjective nature. *Jackson*, 274 Va. at 231. Or more specifically, Patel could not allege merely that CNN as a company knew the challenged statements were false or published them with reckless disregard for their veracity, as such conclusory allegations do not address the specific "state of mind" necessary to maintain his action, they lack sufficient definiteness from which a court could conclude that *persons* at CNN had a high degree of subjective awareness that the statements were probably false and published them anyway. *Ogunde*, 274 Va. at 66; *Jackson*, 274 Va. at 230.

Moreover, given this case's procedural history, we do not consider the amended complaint's allegations in isolation. Rather, we "may properly consider the facts alleged as amplified by" the Ukraine Report, the CBS News article, and the other documents incorporated via oyer. *Ward's Equip. v. New Holland N. Am.*, 254 Va. 379, 382 (1997) (quoting *Hechler Chevrolet, Inc. v. Gen. Motors Corp.*, 230 Va. 396, 398 (1985)). In addition, we may "ignore" any of the complaint's factual allegations that those documents contradict before deciding whether the surviving allegations are sufficiently definite to enable a court to find the existence of a legal basis of judgment under the exacting actual malice standard applicable to public

officials. *Id.* at 382-83 (citing *Fun v. Va. Mil. Inst.*, 245 Va. 249, 253 (1993)); *A.H.*, 297 Va. at 613.

Patel argues that the "aggregate" of his allegations demonstrated that CNN published the challenged statements "with knowledge that they were false or with reckless disregard for whether they were false." He alleged that CNN "harbored extreme professional and personal animus, bias, spite and ill will" toward him, and published the statements to "sensationalize the 'news,'" "profit from . . . its false statements," and "insult" him. He maintains that CNN's "agents" were "present during the House impeachment inquiry" and had read the Ukraine Report, so CNN "knew" that no "evidence" was actually "'uncovered' connecting [him] to" conspiracy theories or "any 'diplomatic back channel led by . . . Giuliani.'" Consequently, he alleged, CNN "manufactured" the challenged statements "out of whole cloth." In doing so, CNN "abandoned all journalistic integrity," "violated its own code of ethics," and "ignored its own prior reporting and reliable information that contradicted" the challenged statements. Indeed, Patel alleged that CNN "purposefully avoided . . . the truth" by publishing the challenged statements despite knowing that he had denied the allegations.

To begin, it is well-established that the actual malice standard is not satisfied merely "through a showing of ill will or 'malice' in the ordinary sense of the term," or that the "defendant published the defamatory material . . . to increase its profits." *Harte-Hanks*, 491 U.S. at 666-67 (citing *Beckley Newspapers Corp. v. Hanks*, 389 U.S. 81 (1967) (per curiam)). Indeed, "[d]efamation judgments do not exist to police [media companies'] objectivity." *Blankenship v. NBCUniversal, LLC*, 60 F.4th 744, 760 (4th Cir. 2023) (quoting *Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 716 (4th Cir. 1991) (en banc)). Although a media company's ill will toward a public official is relevant, the actual malice standard, properly understood, protects freedom of expression specifically for those who harbor ill will towards those officials, publish defamatory

- 15 -

statements for profit, or "'resort[] to exaggeration'" or even "'vilification'" "'[t]o persuade others to [their] own point.'" *Sullivan*, 376 U.S. at 271; *Harte-Hanks*, 491 U.S. at 667. Thus, under the actual malice standard, a public official must plead with sufficient definiteness, even for media companies that harbor ill will and ordinary malice, that specific persons within those companies who were responsible for the challenged statements knew the statements were false or had "a high degree of subjective awareness of their probable falsity." *Jackson*, 274 Va. at 230 (citing *Harte-Hanks*, 491 U.S. at 667).

Yet Patel's allegations do not enable such a conclusion because they do not sufficiently "bring home" the actual malice standard to a person or persons at CNN responsible for publishing the challenged statements. *Sullivan*, 376 U.S. at 287. Patel's amended complaint targets CNN generally, alleging, among other things, that *CNN* was biased and harbored ill will against him, *CNN* fabricated the challenged statements, *CNN* ignored its own reporting and reliable information contradicting the challenged statements, *CNN* abandoned journalistic integrity and violated its own code of ethics, *CNN* deliberately and recklessly conveyed a false message to sensationalize the news, *CNN* republished the statements after being informed that Patel contested them, and *CNN* purposefully avoided the truth.

But CNN is a media corporation. *Cf. Sfreddo v. Sfreddo*, 59 Va. App. 471, 481 (2012) ("[T]he corporation, being an artificial person created by law, can have no separate intent of its own apart from those who direct its affairs." (quoting *Loftin & Woodard, Inc. v. United States*, 577 F.2d 1206, 1244 (5th Cir. 1978))). And the actual malice standard is a subjective one that requires facts demonstrating the specific "state of mind" of a person within a media corporation at the time of publication. *Jackson*, 274 Va. 231; *Harte-Hanks*, 491 U.S. at 688. "Under th[at] standard, knowledge of [a statement's] falsity held by a principal cannot be imputed to its agent. It is the state of mind of the speaker that is relevant." *Mimms v. CVS Pharm., Inc.*, 889 F.3d 865,

- 16 -

868 (7th Cir. 2018) (citing *Sullivan*, 376 U.S. at 287). Thus, Patel's complaint was obliged to do more than target CNN generally. It had to allege material facts sufficient to establish a basis for a court to "impute[]" any knowledge CNN had generally to the specific persons who were responsible for publishing the challenged statements in this case. *See id.*; *Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 123-24 (2d Cir. 2013) ("Where, as here, the defendant is an institution rather than an individual, the question is whether the individual responsible for the statement's publication acted with the requisite culpable state of mind." (quoting *Holbrook v. Harman Auto., Inc.*, 58 F.3d 222, 225 (6th Cir. 1995))).

Patel's obligation to "bring home" actual malice to the minds of specific persons at CNN is particularly pronounced in this case, where each defamatory statement had multiple and different authors, rendering the state of mind of each person critical to discerning which of the statements, if any, may have been published with the requisite intent. *See Holbrook*, 58 F.3d at 225 (stating that the inquiry must "focus solely on [the] state of mind" of the actual person). For although we accept as true on demurrer Patel's claim that CNN harbored ill will against Patel for his work on the Nunes Memo, we cannot reasonably infer from that allegation that every journalist and publisher harbored the same ill will, or to the same degree. And although we accept as true that CNN's unidentified "agents" attended the House impeachment inquiry and "saw transcripts of testimony and reports of the impeachment proceedings," that allegation does not enable the conclusion that the specific publishers of the challenged statements in this case were those "agents" or knew what was revealed in those transcripts or during the impeachment inquiry hearings. Thus, even taking those allegations as true, they do not enable the conclusion that the specific publishers of the challenged statements in this case knew the statements were false or acted with reckless disregard of their falsity. *See Mimms*, 889 F.3d at 868 (holding that,

- 17 -

"[a]s a matter of law, [the plaintiff] could not" demonstrate that a corporation's employees knew that their statements were false "by imputing corporate knowledge to the speakers").

In other contexts, we have recognized that it is "difficult" to discern "a subjective state of mind." *Rodriguez v. Commonwealth*, 18 Va. App. 277, 282 (1994). Often, parties must rely on circumstantial evidence or, to prove corporate intent, "the actions and statements of the [corporate] officers, directors, and employees who are in positions of authority." *Sfreddo*, 59 Va. App. at 481 (quoting *United States v. Basic Constr. Co.*, 711 F.2d 570, 573 (4th Cir. 1983)). But outside of identifying the names of the specific authors of the challenged statements, Patel's operative complaint does not make any allegations of those authors' actions or statements. His complaint cites prior articles that the Nunes Memo allegedly undermined, leading to *CNN*'s "grudge" and ill will against him, but he does not allege that any of those prior articles were authored by the publishers of the challenged statements in this case. Similarly, he alleges that the challenged statements are a "continuation" of *CNN*'s "past smear campaigns" against him and Congressman Nunes, but he does not cite any examples of those past smear campaigns or allege that any of the specific publishers of the challenged statements in this case were involved in those campaigns. Thus, although Patel's complaint plainly contains numerous allegations about CNN generally, those allegations are not calibrated to the exacting actual malice standard applicable to his defamation claim. *See Rafalko*, 290 Va. at 396; *Sullivan*, 376 U.S. at 279-80. That is, they are not sufficiently definite to enable a court to find the existence of a legal basis for judgment in Patel's favor as they do not permit any inferences regarding the subjective state of mind of specific persons at CNN. *Jackson*, 274 Va. at 231.

Moreover, Patel's allegations that *CNN* "ignored its own prior reporting," "public records," and "reliable information" contradicting the challenged statements also are not sufficiently definite to bring home actual malice to the mind of a person or persons. As an initial

matter, outside of Patel's own denials in the CBS News article, the amended complaint does not identify what prior reporting, public information or other reliable information he refers to, let alone how such information contradicted the challenged statements. Thus, the allegations are conclusory and not binding. *Ogunde*, 274 Va. at 66 (citing *Jordan*, 255 Va. at 499). In any event, "[t]he mere presence of news stories in a newspaper's files containing information that contradicts an allegedly defamatory statement by the news organization is insufficient to establish malice." *Jackson*, 274 Va. at 229 (citing *Sullivan*, 376 U.S. at 287). For the reasons explained above, that *CNN* generally "ignored" certain prior articles or information does not "bring home" the requisite state of mind to any of the various authors of the challenged statements in this case. *See Sullivan*, 376 U.S. at 287.

In addition, the Ukraine Report and CBS News article contradict Patel's allegations that CNN ignored reliable information demonstrating that the challenged statements were false, "lacked reasonable grounds" supporting them, and instead "fabricated" and "manufactured" the statements "out of whole cloth" without reliable sources. *See Ward's*, 254 Va. at 382 (holding that "a court *considering a demurrer* may *ignore* a party's factual allegations contradicted by the terms of authentic, unambiguous documents that properly are a part of the pleadings" (emphases added) (citing *Fun*, 245 Va. at 253). As facts supporting those allegations, Patel alleges that because CNN "agents" were aware of what was revealed during the House impeachment inquiry and had read the Ukraine Report, it "knew" that no "evidence" was actually "'uncovered' connecting [him] to" conspiracy theories or "any 'diplomatic back channel led by . . . Giuliani.'"

This Court takes no position on the veracity of the Ukraine Report's contents, claims, and implications. Nor do we suggest that the Ukraine Report proved that Patel was connected to any back-channel communications regarding Ukraine. Nevertheless, the Ukraine Report in fact connected Patel to Giuliani's "meddling" efforts in Ukraine on behalf of Trump. It presented

Giuliani's May 10, 2019 phone call with Patel as being sandwiched between other calls that were explicitly about Giuliani's intent to pressure Ukraine into launching investigations into the alleged "conspiracy theories" on behalf of President Trump. The report implied that Giuliani was busy that day with a "flurry" of phone calls about his intended Ukraine trip and that his relatively lengthy call to Patel was a part of that overall effort. Moreover, as the Intelligence Committee spokesman said after the Ukraine Report was released, Dr. Hill's testimony during the impeachment inquiry implying that Patel might have retained "some special . . . representational role on Ukraine" suggested that he may have been "providing information to the President on Ukraine as part of an *alternate channel*." (Emphasis added).

Based on those circumstances, *CBS News* reported about a year before CNN published the challenged statements in this case that the Ukraine Report had in fact linked Patel to Giuliani's efforts, reporting that Dr. Hill's testimony and Giuliani's "call records" as "revealed in the report" had "suggested" that Patel "may have been part of a back channel to the president on Ukraine." Indeed, Patel's denials in the CBS News article demonstrate that *he too* reached the same conclusions from the Ukraine Report because he stated that he was "never a back channel to President Trump on Ukraine matters, at all, ever. Never—no meetings, no shuttling of documents, no meetings in secret. Never happened. I have no idea where they [the Democrats who drafted the Ukraine Report] got that from."

The above documents attached via oyer belie Patel's allegations that CNN "fabricated" and "manufactured" the challenged statements "out of whole cloth" without a source. CBS News, CNN, and even Patel made the same inference from the Ukraine Report—that it in fact made such a connection. Moreover, the report cited Giuliani's call records and Dr. Hill's testimony as evidence its authors believed supported the connection. *See J&R Enters. v. Ware Creek Real Est. Corp.*, 80 Va. App. 603, 608-11 (2024) (testimony is a type of evidence). Thus,

the challenged statements plainly were not purely fictional fantasies that sprung from the imaginations of (unidentified) persons at CNN, and we may therefore "ignore" Patel's allegations that they were so "fabricated" and "manufactured" when reviewing the demurrer. *Ward's*, 254 Va. at 382. Rather, the challenged statements merely reported the same conclusions from the Ukraine Report that CBS News and even Patel had previously inferred, explicitly citing the House impeachment inquiry as the source in one instance. *See Jordan*, 269 Va. at 581 (holding that certain allegedly defamatory statements were not "fabricated" when the defendant "relied on public information" as reported in an article "for the content of his ads"); *Sullivan*, 376 U.S. at 287-88 (holding that a defendant's reliance on a responsible source negates a finding of "the recklessness that is required for a finding of actual malice").[8]

Although it is true that Patel denied the Ukraine Report's allegations in the CBS News article, and he alleges that CNN knew about that denial when it published the challenged statements, those circumstances did not trigger a duty for CNN to further investigate the matter before publishing the challenged statements or expose CNN to allegations that it purposefully avoided the truth. Nor does CNN's decision to publish the challenged statements based on the Ukraine Report constitute an "abandon[ment]" of "journalistic integrity" and violation of its "code of ethics" sufficient to infer actual malice.

As an initial matter, Patel's allegations that *CNN* knew about Patel's denial is not sufficiently definite to bring home that knowledge to the specific publishers of the challenged

---

[8] The Ukraine Report also contradicts the amended complaint's allegations that CNN knew or believed the challenged statements were false because it had read the report and knew what happened during the impeachment inquiry before publishing the statements. Even if we assumed that one of the specific publishers of the challenged statements read the Ukraine Report, and not just CNN "agents" generally, Patel points to nothing in the Ukraine Report that would necessarily cause a reader to *subjectively* harbor a belief that the challenged statements were *probably* false after reading it. *Jackson*, 274 Va. at 230. Rather, the Ukraine Report was plainly intended to give the impression that the challenged statements are probably true.

statements in this case. For that reason alone, the above allegations do not help Patel's cause of pleading facts sufficient to demonstrate actual malice. *See Mimms*, 889 F.3d at 868. In addition, it is well established that publishing a statement despite a public official's denial is insufficient to satisfy the actual malice standard. *Edwards v. Nat. Audubon Soc.*, 556 F.2d 113, 131 (2d Cir. 1977) (holding that liability under *Sullivan* "cannot be predicated on mere denials"). "[S]uch denials are so commonplace . . . that, in themselves, they hardly alert the conscientious reporter to the likelihood of error." *Id.* at 121. A media company need not credit a self-serving denial. Nor must it investigate every denied allegation to avoid being accused of purposefully avoiding the truth. Rather, "in the context of the actual malice inquiry, a duty to investigate the accuracy of one's statements does not arise until the publisher of those statements has a high degree of subjective awareness of their probable falsity." *Jackson*, 274 Va. at 230 (citing *Harte-Hanks*, 491 U.S. at 688). Thus, Patel's denial in the CBS News article did not trigger a duty to investigate for purposes of the actual malice standard,[9] even when considered in addition to all of his other allegations, as it does not demonstrate that any specific person at CNN had a high degree of subjective awareness that the challenged statements were *probably* false. *Id. See also Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 783 (1986) (Stevens, J., dissenting) ("For [the actual malice] standard to be met, the publisher must come close to willfully blinding itself to the falsity of its utterance.").

In sum, defamation requires a false statement, *Jordan*, 269 Va. at 575 (citing *M. Rosenberg*, 182 Va. at 518), and when the plaintiff is a public official like Patel, constitutional

---

[9] Even if a reasonably prudent journalist would have investigated under those circumstances, that is not enough to demonstrate actual malice. *Harte-Hanks*, 491 U.S. at 688 (citing *St. Amant*, 390 U.S. at 731, 733). Indeed, because CNN relied on the Intelligence Committee's Ukraine Report in publishing the challenged statements, any failure to directly interview Patel or further investigate would, at most, constitute negligence, not an abandonment of "journalistic integrity" sufficient to infer actual malice. *Sullivan*, 376 U.S. at 287-88.

free speech principles require the specific publishers of the false statement to *subjectively* know that the statement was false or harbor a belief that it was probably false and publish it anyway. *Jackson*, 274 Va. at 228 (citing *Yeagle*, 255 Va. at 295). And to survive demurrer in Virginia, a public official's defamation complaint needs to be calibrated to that exacting constitutional standard. *Id.* It cannot rely on conclusory allegations, *Ogunde*, 274 Va. at 66 (citing *Jordan*, 255 Va. at 499), but must instead allege instances of specific conduct with sufficient definiteness to justify the conclusion that *specific persons*, not just a media company in general, published the statements with actual malice, *A.H.*, 297 Va. at 613; *Jackson*, 274 Va. at 228. Yet the numerous allegations in Patel's complaint target CNN generally. While he names the various authors of the challenged statements, his allegations are not calibrated to the actual malice standard governing his cause of action because they do not attempt to "bring home" the requisite "state of mind" to those authors. *Jackson*, 274 Va. at 231. Instead, he relies on nonbinding, conclusory assertions that CNN as a media company acted with actual malice, which unsupported by specific, material facts necessary to find the existence of a basis for judgment. *Ogunde*, 274 Va. at 66 (citing *Jordan*, 255 Va. at 499). As the circuit court found, those allegations simply do not justify a finding of actual malice.

Indeed, even taking all of Patel's allegations together as they remain after the above analysis, they are not sufficient to survive demurrer. In *Brimelow v. New York Times Co.*, 2021 U.S. App. LEXIS 31672, at \*6-10 (2d Cir. Oct. 21, 2021), the plaintiff alleged that the Times acted with actual malice based on a litany of facts even longer than those invoked here, including that the Times allegedly ignored plaintiff's "repeated" denials, did not rely on statements plaintiff had made to third parties, departed from accepted newsgathering standards, acted with ill will or in furtherance of a preconceived narrative, failed to investigate, and failed to act impartially. The Second Circuit Court of Appeals considered the above pleaded facts in

conjunction and concluded that they still did not sufficiently plead actual malice, ultimately deciding that there was "no combination of allegations from which one could plausibly infer that the Times was purposely avoiding the truth in its reporting." *Id.* at \*11. In this case, Patel's position is even weaker as his allegations are conclusory and contradicted by the Ukraine Report and CBS News article. Moreover, they fail to sufficiently bring home the requisite state of mind to the specific publishers of the challenged statements. Thus, even considering Patel's allegations in the aggregate, they fail to plead facts with sufficient definiteness to enable the conclusion that CNN published the challenged statements with actual malice.[10]

CONCLUSION

The actual malice standard imposes exacting requirements on a public figure pursuing a defamation action against a media company to ensure that robust speech about a public figure and issue is not self-censored and has the breathing space it needs to survive. *Sullivan*, 376 U.S. at 272, 279. Those exacting requirements necessarily and appropriately result in stringent pre-trial pleadings requirements. *See Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) (holding that "every circuit that has considered the matter" had held "that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not [pleaded] facts sufficient to give rise to a reasonable inference of actual malice"). Indeed, even "[f]orcing publishers to defend inappropriate suits through expensive discovery proceedings . . . would constrict that breathing space in exactly the manner the actual malice standard was intended to prevent." *Id.*

---

[10] "We have an 'obligation to decide cases on the best and narrowest grounds available.'" *Theologis*, 76 Va. App. at 603 (quoting *Esposito v. Va. State Police*, 74 Va. App. 130, 134 (2022)). Given our conclusion, we do not address Patel's other arguments in this appeal, including that the trial court erred by finding that the statements were not defamatory per se, by "ignoring the defamatory meaning and implications" of the statements, and by finding that the statements were protected by Virginia's Fair Report Privilege. *See id.* at 605 n.5.

- 24 -

Yet, the actual malice standard does not impose an insurmountable pre-trial pleading burden, only an exacting one. Patel's complaint contains many factual allegations that we accept as true when reviewing the demurrer. But those detailed allegations are not calibrated to the actual malice standard as they target CNN generally and do not even attempt to "bring home" the requisite "state of mind" to the actual publishers of the challenged statements in this case. *Sullivan*, 376 U.S. at 287. Simply, to survive demurrer, Patel was obliged to plead facts that would permit a reasonable inference that a specific individual knew the challenged statements were false or subjectively believed they were probably false and published them anyway. The allegations in the amended complaint, even when considered in aggregate and viewed in the light most favorable to Patel, did not meet that standard. Thus, the circuit court's judgment sustaining CNN's demurrer is affirmed.

*Affirmed.*

Frucci, J., dissenting.

The Supreme Court of Virginia has repeatedly admonished courts about granting motions that "short circuit" the legal process, depriving litigants of their "day in court" and the appellate courts of the "opportunity to review a thoroughly developed record on appeal." *Seyfarth, Shaw Fairweather & Geraldson v. Lake Fairfax Seven Ltd. P'ship*, 253 Va. 93, 95 (1997). *See CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22 (1993); *Renner v. Stafford*, 245 Va. 351 (1993); *Carson v. LeBlanc*, 245 Va. 135 (1993). This is particularly true in the context of demurrers wherein a circuit court tests the adequacy of the pleadings rather than the merits of the case. *Fuste v. Riverside Healthcare Ass'n Inc.*, 265 Va. 127, 131-32 (2003). And yet, the majority holds that it was not an error to short-circuit Patel's civil action for failing to plead with sufficient definiteness that CNN published the contested statements with actual malice. Although a well-written opinion, I respectfully disagree with its analysis and judgment and would hold that, for the purposes of the demurrer, Patel adequately pleaded actual malice. Furthermore, I would also hold that Patel adequately pleaded defamation per se and that CNN's statements were not protected by Virginia's fair report privilege. Therefore, I respectfully dissent.

Actual Malice

The elements of defamation by publication are: "(1) publication; of (2) an actionable statement; with (3) the requisite intent." *Schaecher v. Bouffault*, 290 Va. 83, 91 (2015) (quoting *Tharpe v. Saunders*, 285 Va. 476, 480 (2013)).[11] In regard to the necessary intent element, it is undisputed that Patel is a public figure, and therefore, he must allege that the defamatory statements were made with actual malice. *See New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). "[A] defamatory statement [is] made "with 'actual malice'" when made "with

---

[11] In the case at hand, it is undisputed that the statements were published.

knowledge that it was false or with reckless disregard of whether it was false or not." *Jackson v. Hartig*, 274 Va. 219, 228 (2007) (quoting *Sullivan*, 376 U.S. at 279-80). Furthermore, "reckless disregard for the truth . . . requires more than a departure from reasonably prudent conduct." *Jordan v. Kollman*, 269 Va. 569, 580 (2005) (alteration in original) (quoting *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989) (finding the defendant needs to have had a high degree of awareness of probable falsity)). "[I]n the context of the actual malice inquiry, a duty to investigate the accuracy of one's statements does not arise until the publisher of those statements has a high degree of subjective awareness of their probable falsity." *Jackson*, 274 Va. at 230. Similarly, "[w]hile 'it cannot be said that evidence concerning motive or care never bears any relation to the actual malice inquiry,' proof of a media defendant's ill will toward a public figure plaintiff is, without more, insufficient to establish knowledge of falsity or reckless disregard for the truth." *Id.* at 231 (quoting *Harte-Hanks Commc'ns Inc.*, 491 U.S. at 688). *See St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) (stating that "reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing," but rather "[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication").

As such, I would agree that mere allegations that CNN was biased against Patel and that CNN relied on the Report without investigating it would not be sufficient to establish "knowledge of falsity or reckless disregard for the truth."[12] However, Patel's amended complaint not only alleges facts of bias and failure to investigate but also contains allegations of fabrication, "manufactur[ing] the [s]tatements out of whole cloth," failure to follow CNN's code

_____

[12] Nor would Patel denying the truth of the statements, as is typical with many defamation cases, alone be enough to allege a reckless disregard for the truth.

- 27 -

of ethics, contrary prior reporting by CNN, CNN's agents reviewing public records and reports that contradicted the claims of their statements prior to making the statements, CNN having no factual basis for their statements, and CNN "purposefully misrepresent[ing] facts" and "omit[ing] facts . . . in a way that intentionally convey[] a false meaning." "These allegations are concrete and amount to more than a 'mere recitation' of the actual malice standard." *Gilmore v. Jones*, 370 F. Supp. 3d 630, 673 (W.D. Va. 2019).

In reaching their conclusion, the majority opinion conflates the standard of review of a demurrer with that for the sufficiency of the evidence. Though Patel includes numerous factual allegations of CNN having "multiple agents who were present during the House impeachment inquiry," seeing "transcripts of testimony and reports of the impeachment proceedings," and having no basis for the contested statements, the majority opinion incorrectly dismisses allegations in the amended complaint as having no weight, and further, improperly makes assumptions and inferences beyond a reasonable reading of the amended complaint and its accompanying documents, thus usurping the role of the factfinder at trial. At the time of a demurrer, the "factual allegations [pleaded in a complaint are] . . . wholly untested by the adversarial process." *A.H. ex rel. C.H. v. Church of God in Christ, Inc.*, 297 Va. 604, 614 (2019). This Court must "accept as true all factual allegations expressly pleaded in the complaint" and is required to interpret them and any accompanying inferences "in the light most favorable to the plaintiff." *Taylor v. Aids-Hilfe Koln e.V.*, 301 Va. 352, 357 (2022) (quoting *Coward v. Wellmont Health Sys.*, 295 Va. 351, 358 (2018)). Any factual allegations that "fairly can be viewed as impliedly alleged or reasonably inferred from the facts [expressly] alleged" must be accepted by this Court as true. *Hooked Grp., LLC v. City of Chesapeake*, 298 Va. 663, 667 (2020) (quoting *Welding, Inc. v. Bland Cnty. Serv. Auth.*, 261 Va. 218, 226 (2001)). Looking at the allegations in their entirety for the purposes of the demurrer at issue, Patel did

sufficiently allege facts that CNN acted with "knowledge of falsity or reckless disregard for the truth" to allow the amended complaint to survive the demurrer.

The majority opinion agrees with CNN that the amended complaint fails to allege facts that "brought home" the state of mind for actual malice to the individuals at CNN who made the statements. *See Sullivan*, 376 U.S. at 287 (stating that "the state of mind required for actual malice would have to be brought home to the persons in the Times' organization having responsibility for the publication of the advertisement"). However, in addition to the factual allegations already described, the amended complaint also includes allegations of who wrote the CNN statements and actions taken by CNN agents. It is also undisputed the Report was a public document. As such, it is not unreasonable to infer under the allegations of the amended complaint that the authors acted with a "knowledge of falsity or reckless disregard for the truth." As we accept as true allegations expressly pleaded and those that can be fairly inferred, I would conclude that the amended complaint sufficiently alleged facts that "brought home" the state of mind of the authors as agents of CNN with respect to the allegedly false statements for the limited purposes of the demurrer. Therefore, I hold that the circuit court erred in sustaining the demurrer for failing to plead actual malice.[13]

### Defamation per se

The majority opinion does not address Patel's arguments that the circuit court erred by finding he did not plead defamation per se and that the Virginia fair report privilege protected

---

[13] Furthermore, upon finding Patel failed to sufficiently plead actual malice, the circuit court also found that the nature of the CNN statements related to a matter of public concern and were subject to Code § 8.01-223.2. Assuming without deciding that the procedural posture of this case allowed for that determination, since I would find that Patel did sufficiently plead actual malice for the purposes of the demurrer, I would find that it was an error to sustain the demurrer on that ground as well.

CNN's statements. As I reach a different conclusion regarding actual malice, addressing those arguments is necessary in determining whether the circuit court committed a reversible error.

A statement is defamatory per se when it (1) "impute[s] to a person the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished"; (2) "impute[s] that a person is infected with some contagious disease, where if the charge is true, it would exclude the party from society"; (3) "impute[s] to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment"; or (4) "prejudice[s] [a] person in his or her profession or trade." *Tronfeld v. Nationwide Mut. Ins. Co.,* 272 Va. 709, 713 (2006) (citing *Fleming v. Moore*, 221 Va. 884, 889 (1981)). Looking at "a finding of per se defamation . . . based upon the effect of [an] allegation upon the plaintiff's work," the Supreme Court of Virginia has "held that the words must contain an imputation that is 'necessarily hurtful' in its effect upon plaintiff's business and must affect him in his particular trade or occupation." *Fleming*, 221 Va. at 889-90 (citing *James* v. *Haymes*, 160 Va. 253, 261-62 (1933); *accord*, W. Prosser, *Torts* § 112, at 758 (4th ed. 1971)). As such, "[t]here must be a nexus between the content of the defamatory statement and the skills or character required to carry out the particular occupation of the plaintiff." *Fleming*, 221 Va. at 890 (citing Restatement (Second) of Torts § 573, cmt. e (1976)). "For example, because an attorney is required to adhere to the disciplinary rules, charging an attorney with unethical conduct is defamatory per se." *Id.* (citing *Carwile v. Richmond Newspapers, Inc.*, 196 Va. 1, 8 (1954)).

Furthermore, "[i]n order to render words defamatory and actionable it is not necessary that the defamatory charge be in direct terms[,] but it may be made indirectly, and it matters not how artful or disguised the modes in which the meaning is concealed if it is in fact defamatory." *Carwile*, 196 Va. at 7. "However, the meaning of the alleged defamatory charge 'cannot, by

innuendo, be extended beyond its ordinary and common acceptation.'" *Perk v. Vector Res. Grp.*, 253 Va. 310, 316 (1997) (quoting *Carwile*, 196 Va. at 8). As such, "innuendo cannot be employed to 'introduce new matter, nor extend the meaning of the words used, or make that certain which is in fact uncertain.'" *Id.* (quoting *Carwile*, 196 Va. at 8). [14]

In looking at the content of the pleaded defamatory statements at hand, to state that an attorney and government official is connected to spreading unfounded, conspiracy theories or efforts to coerce other countries "implies a combination of dishonesty [and] incompetence." *Tronfeld*, 272 Va. at 714. Furthermore, in doing so it "damage[s] . . . [Patel's] standing to engage in his . . . chosen profession and carr[ies] the connotation that he . . . lacks the integrity and fitness to practice law." *Id.* As such, the statements "contain an imputation that is 'necessarily hurtful' in its effect upon [Patel's] business and . . . affect him in his particular trade or occupation," making the statements defamatory per se. *Fleming*, 221 Va. at 889-90. Therefore, for purposes of the demurrer, Patel did sufficiently allege that the statements were defamatory per se, and I would hold that the circuit court erred in sustaining the demurrer on the grounds that Patel failed to allege defamation per se.

---

[14] Notably, Patel also argues that the circuit erred in ruling that Patel failed to "identify the 'words actually used' that give rise to the defamatory implication." "In determining whether the words and statements complained of in the instant case are reasonably capable of the meaning ascribed to them by innuendo, every fair inference that may be drawn from the pleadings must be resolved in the plaintiff's favor." *Carwile*, 196 Va. at 8. As detailed above, Patel alleged that CNN made statements that he was connected to spreading unfounded conspiracy theories about a presidential candidate and connected to efforts to coerce other countries. When giving these statements their plain meaning, it can be implied that Patel engaged in unethical, dishonest, and incompetent actions. Therefore, I would hold that in the context set forth in the complaint, including the articles attached, the statements made by CNN, when given their plain meaning, are reasonably capable of conveying the defamatory innuendo of which Patel complains, and the circuit court erred in finding that he failed to "identify the 'words actually used' that give rise to the defamatory implication."

<u>Virginia's Fair Report Privilege</u>

Under Virginia law, reporting on public proceedings and records is privileged despite their defamatory nature so long as it constitutes "a fair and substantially true account of the particular proceeding or record." *Alexandria Gazette Corp. v. West*, 198 Va. 154, 160 (1956). As such, a court must determine as a matter of law whether a statement supports the invocation of this privilege. *Id.* at 163.[15] In determining whether the privilege is invoked, we are not "concerned with the truth or falsity of the allegations in the [official proceeding or report]; but with the question whether or not the news article was published in good faith and was a substantially correct report of the [official proceeding or report]." *Id.* at 159.

The policy reasons for such a legal doctrine are self-evident, to-wit: Fair reporting of a public proceeding or report, without fear of litigation for defects in the source material, should be protected and not subject to undue delay for fear of a lawsuit.[16] For this reason, fair reporting, tested with the "substantially correct" standard, should always be protected in Virginia. However, the record shows that the alleged words published in this case by CNN are far from substantially correct and in fact take the source material to stratospheric levels, making the circuit court's finding that the statements were protected by the privilege plainly wrong.

CNN claims that the Report entitles it to the protection of Virginia's fair report privilege for its statements that (1) "Kash Patel . . . was connected to efforts to spread conspiracy theories about Joe Biden"; (2) "The House impeachment inquiry uncovered evidence connecting Patel, who was then working as an aide to [Congressman Devin] Nunes, to the diplomatic back channel

---

[15] If it is determined that a statement does support the invocation of the privilege, it is ordinarily for the jury to decide whether the privilege has been abused. *Alexandria Gazette Corp*, 198 Va. at 163.

[16] *See* Restatement (Second) of Torts § 611 cmt. a (1977) (stating that "[t]he basis of this privilege is the interest of the public in having information made available to it as to what occurs in official proceedings and public meetings").

led by Trump attorney Rudy Giuliani, and the efforts to spread conspiracy theories about Joe Biden and coerce Ukraine into announcing an investigation of the former vice president"; and (3) the "Defense Department transition office . . . is led by a Trump loyalist [Kash Patel] connected to efforts to spread conspiracy theories about the President-elect." However, in an approximately 300-page document, the Report did not describe anything Patel did other than speak on the phone on a single occasion and said nothing about the contents of the conversation. Besides the telephone call, the only other reference to Patel is an instance in which an official believed that he may be the individual that the President wished to speak to about "Ukraine-related 'materials,'" about which no further details were provided. This cannot be described as fairly reporting that Patel was connected to efforts to spread conspiracy theories or as recounting evidence that Patel was connected to "the diplomatic back channel" led by Giuliani or efforts to "spread conspiracy theories about Joe Biden" or to "coerce Ukraine into announcing an investigation of the former vice president." While Virginia's fair report privilege does not require a full quotation and can apply so long as the reporting "was a substantially correct report of the [official proceeding or report]," CNN here did not selectively quote from the Report or fairly abridge the statements of the Report. *Alexandria Gazette Corp.*, 198 Va. at 159. Rather, CNN made broader statements that went far beyond what could be fairly supported by the Report. As the pleaded statements were not a substantially correct account of what was stated in the Report, I would conclude that the statements are not protected by Virginia's fair report privilege and that the circuit court erred in sustaining the demurrer based on protection under Virginia's fair report privilege.

### Conclusion

In applying the correct standard of review in looking at this case from the perspective of the demurrer, and accepting as true all factual allegations and reasonable inferences and

interpreting those allegations in the light most favorable to Patel, I would hold that the circuit court erred by "incorrectly . . . short-circuit[ing] litigation pretrial and . . . decid[ing] the dispute without permitting the parties to reach a trial on the merits." *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24 (1993) (quoting *Renner v. Stafford*, 245 Va. 351, 352 (1993)). Furthermore, as the statements made by CNN were defamatory per se, Patel did allege facts that CNN acted with "knowledge of falsity or reckless disregard for the truth," and the statements made by agents of CNN were not a substantially correct account of the Report that could be protected by Virginia's fair report privilege, therefore, I would reverse the circuit court's judgment and remand the case for further proceedings.